# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-IA-01261-SCT

*THE ALABAMA GREAT SOUTHERN RAILROAD COMPANY, MISSISSIPPI TRANSPORTATION COMMISSION AND MISSISSIPPI DEPARTMENT OF TRANSPORTATION*

*v.*

*CHANTEL JOBES*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/08/2013 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| TRIAL COURT ATTORNEYS: | CHRISTOPHER OWEN MASSENBURG |
| | ROMNEY H. ENTREKIN |
| | GRAYSON LACEY |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | ROMNEY H. ENTREKIN |
| | RICHARD O. BURSON |
| | GRAYSON LACEY |
| | CHRISTOPHER O. MASSENBURG |
| ATTORNEY FOR APPELLEE: | GEORGE W. BYRNE, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 01/22/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH
## NO. 2013-IA-01268-SCT

*MISSISSIPPI DEPARTMENT OF TRANSPORTATION AND MISSISSIPPI TRANSPORTATION COMMISSION*

*v.*

*CHANTEL JOBES*

DATE OF JUDGMENT:                      07/08/2013
TRIAL JUDGE:                          HON. PRENTISS GREENE HARRELL
COURT FROM WHICH APPEALED:    LAMAR COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANTS:      CHRISTOPHER OWEN MASSENBURG
ATTORNEY FOR APPELLEE:         GEORGE W. BYRNE, JR.
NATURE OF THE CASE:            CIVIL - PERSONAL INJURY
DISPOSITION:                        REVERSED AND RENDERED - 01/22/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE DICKINSON, P.J., LAMAR AND CHANDLER, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.    In the early morning hours of April 19, 2010, Chantel Jobes's vehicle left the southbound lane of Highway 11, crossed the northbound lane and crashed into a concrete railroad trestle. Jobes was seriously injured in the accident, and she filed a complaint against Norfolk Southern Railway Company, the Mississippi Transportation Commission, and the Mississippi Department of Transportation. The trial judge denied the defendants' motions for summary judgment. This Court granted the defendants' request for an interlocutory appeal, and we now render summary judgment in their favor.

<strong>FACTS AND PROCEDURAL HISTORY</strong>

¶2.    On April 18, 2010, Jobes began her shift as a manager at T.G.I. Friday's in Hattiesburg at 4:00 p.m.[1] She finished her shift between 1:00 and 1:30 a.m. the morning of April 19. She then went to a 24/7 gym nearby to work out, which was her normal routine.

---

[1] Jobes testified in her deposition that she does not remember the accident or the day leading up to the accident, but she has been able to piece together a timeline of events with the help of friends and coworkers.

She worked out for about an hour and then headed to a friend's house to celebrate his birthday. She does not remember the party, but her friends told her that she "didn't want to finish the cocktail or the drink [she] had," and that she wanted to go home.

¶3.     Jobes left the birthday party and headed home to Lumberton. As she neared Lumberton, her vehicle left the southbound lane of Highway 11, crossed the northbound lane and crashed head-on into a concrete railroad trestle.[2] According to the Mississippi Highway Patrol's Uniform Crash Report, the accident was reported at 4:42 a.m. The report also stated that the weather was "dry" and "clear," and that the crash was life-threatening. It is undisputed that Jobes was driving with a suspended license, was legally intoxicated,[3] and had prescription anti-anxiety medication in her system. Jobes testified in her deposition that she had worked three weeks straight with no days off up until the accident, and that she could not remember a time when she had been more stressed.

¶4.     Jobes suffered a fractured jaw, fractured right leg, fractured left knee, fractured right arm, fractured hip, fractured ribs, a collapsed lung, and massive head injuries. On August 22, 2011, she filed her "Petition for Damages" against the Mississippi Department of Transportation/ the Mississippi Transportation Commission (hereinafter "MDOT," collectively) and Norfolk Southern Railway Company. The parties subsequently dismissed

---

[2]The Alabama Great Southern Railway's ("AGSR") predecessor constructed the rail line above the location of Jobes's accident and began operating it in 1883. In 1934, AGSR's predecessor and MDOT's predecessor entered into a contract to construct the underpass where Jobes's accident occurred.

[3]Jobes's blood alcohol content was 0.095.

Norfolk and substituted The Alabama Great Southern Railroad Company ("AGSR") as the proper railroad defendant.

¶5.    In her Petition, Jobes alleged that "suddenly and without warning, she lost control of her vehicle and collided into the Northbound railroad trestle support owned, operated and/or maintained by defendant, [AGSR]." Jobes alleged that her accident was "caused by the negligence" of MDOT and AGSR.

¶6.    Specifically, Jobes alleged that MDOT was negligent by:

(1) Failing to keep the road in a reasonably safe condition;
(2) Allowing the roadway to persist in a defective and substandard condition, despite actual or constructive knowledge of the defective and substandard condition;
(3) Failing to provide an adequate "clear zone" or shoulder at the site of the accident;
(4) Failing to provide adequate and necessary crash cushions at the site of the accident;
(5) Failing to protect or warn of a dangerous condition at the site of the collision of which defendants had notice, and adequate opportunity to issue appropriate warnings;
(6) Failing to erect and/or maintain appropriate and reasonable signs, signals, warning devices, illumination devices, or guardrails and/or barriers at the site of the accident despite actual or constructive notice of the absence and/or inadequate condition of the existing devices;
(7) Failing to construct and/or maintain the roadway in a reasonably safe condition in accordance with industry and highway safety standards; and
(8) Other acts of negligence that will be shown at the trial of this matter.

¶7.    Jobes alleged that AGSR was negligent by:

(1) Failing to keep and maintain the railroad trestle supports in a reasonably safe condition;
(2) Failing to post adequate warning devices;
(3) Failing to undertake timely and reasonable repairs;
(4) Failing to maintain the trestle supports in a [reasonably] safe position; and
(5) Other acts of negligence that will be shown at the trial of this matter.

4

Jobes requested a nonjury trial against MDOT, a jury trial against AGSR, and demanded $10 million in damages.

¶8. The parties engaged in discovery during the next two years. Jobes designated Richard Fitzgerald, professional engineer, as an expert witness. According to Jobes's expert designation, Fitzgerald was expected to testify that the "unprotected bridge pier" constituted an unreasonably dangerous condition, that the roadway under the overpass was in poor condition, that the lack of shoulders on the roadway rendered it unreasonably dangerous, that the railroad overpass supports were unreasonably close to the roadway, and that no adequate warnings were posted. But two months before trial was set to begin, Jobes's counsel notified all counsel of record that she no longer intended to call Fitzgerald as a witness at trial.[4] This left Jobes with no liability expert.[5]

¶9. AGSR and MDOT both filed motions for summary judgment. The parties subsequently filed supplemental motions, responses and rebuttals, but the basic arguments remained the same.

AGSR's Position

¶10. AGSR argued that Jobes was "unable to establish any duty owed by [AGSR] relevant to her claims, much less evidence of a breach of any such duty." AGSR argued that *MDOT*

---

[4]This correspondence is not in the record, but Jobes does not dispute it.

[5]Jobes did designate "technical analyst" Benjamin Smith, but Jobes's expert designation stated that he was expected to testify only as to his "inspection of the accident site, including measurement taken by him and the photographs that were taken, which measurements and photographs are included in the initial preliminary report of Richard Fitzgerald, P.E." There is no indication that Smith was going to testify about the Defendants' duty or about what caused or contributed to the accident.

was the entity responsible for the roadway conditions along Highway 11, including the installation and/or erection of any crash guards and/or warning devices. AGSR highlighted testimony from the deposition of Todd Jordan, MDOT District Maintenance Engineer for District Six, and from the affidavit of transportation engineering expert Dr. Joseph Blaschke.[6]

¶11.　Jordan testified that MDOT was responsible for Highway 11 as it pertained to motorists:

> Q: And at this intersection, as between the railroad and the Mississippi Department of Transportation, MDOT is actually the entity with the authority over the roadway itself; is that correct?
> . . .
> A: Yes.
> Q: And, also, at this intersection, MDOT is responsible for any roadway conditions on and along Highway 11 that the motoring public would face; is that true?
> A: That's true.
> Q: And MDOT would be the authority that is responsible for establishing speed limits on and along Highway 11 and particularly at the location of the overpass with the Alabama Great Southern Railroad Company; is that true?
> A: That's true.
> Q: And MDOT would be responsible for any roadway signs that are on and along Highway 11 as a motorist would approach this intersection; is that true?
> A: That's true.
> Q: And, then, finally, MDOT would be the entity responsible for the installation of any of the crash barriers that would be placed on and along Highway 11 to benefit the motoring public; is that true?
> A: I would think so.

And Dr. Blaschke testified similarly:

> [T]he Railroad Company and MDOT have had separate duties with respect to maintenance of the subject trestle. The Railroad Company's duty has been to maintain the trestle for railroad operations. In other words, the Railroad Company is responsible for maintaining the trestle to ensure that it is structurally sound and capable of supporting the weight of the railroad traffic

---

[6]AGSR attached Jordan's deposition transcript to its motion and Dr. Blaschke's affidavit to its supplemental motion.

6

on top of it. MDOT, on the other hand, is responsible for maintenance of the trestle and the roadway proper for the motoring public traveling underneath the railroad trestle on MS Highway 11. Examples of such maintenance within the sole discretion of MDOT include, but are not limited to, setting the roadway speed limit, placement of traffic control devices, design and installation of safety devices such as crash cushions or guardrails, and design and general maintenance of the surface of the roadway. The Railroad Company, in this case [AGSR], is not responsible for such maintenance of the highway or installation of highway appurtenances, like guardrails and crash cushions, at or near the subject trestle.

Dr. Blaschke also opined that Jobes's negligence was the "sole proximate cause of [the] accident." And pharmacotherapy expert Dr. John Cleary stated in his affidavit[7] that

Ms. Jobes' weight and blood alcohol concentration (95 mg/dL) shortly after her arrival at the Hospital, and at the time of the subject accident, indicates that Ms. Jobes would have been experiencing adverse effects of alcohol that caused her to be significantly impaired with respect to alertness, muscle coordination (e.g., balance, speech, vision, and reaction time), judgment, reasoning, the ability to detect danger, mood and confidence . . . The presence of benzodiazepines in Ms. Jobes' system further enhanced, or increased, Ms. Jobes' level of impairment at the time of the accident.

Finally, AGSR argued that any common-law duty it might have had to protect motorists from its railroad trestles had been superseded by subsequent Mississippi statutory law— specifically, Mississippi Code, Section 65-1-175.[8]

MDOT's Position

¶12.    MDOT argued in its motion that it was immune from liability under the Mississippi

_____

[7]AGSR attached Dr. Cleary's affidavit to its supplemental motion also.

[8]"The jurisdiction of the Mississippi Department of Transportation *shall be exclusive* with respect to public roadway/railroad crossings either at grade or otherwise except to the extent that its jurisdiction is preempted by valid federal statute, regulation or order." Miss. Code Ann. § 65-1-175(1) (Rev. 2012) (emphasis added).

Tort Claims Act, Mississippi Code Section 11-46-9(1), subsections (d)[9] and (v)[10] specifically. MDOT argued that all of Jobes's claims involved either road maintenance or the placement of traffic-control devices, and that those were discretionary functions. MDOT also argued that, even assuming the accident site was unreasonably dangerous, Jobes was aware of the dangerous condition and failed to exercise reasonable care.

¶13.    In rebuttal, MDOT argued that Jobes had not demonstrated an issue of material fact; rather, she had provided the court with only "conclusory allegations and ill-fashioned questions of law."  MDOT also argued that Jobes had presented no evidence of causation, stating: "Plaintiff cites no expert testimony, or other evidence, to establish that a pothole, lack of clear white line, a 'narrow lane,' lack of lighting, or the absence of a barrier on the opposing lane of traffic where the accident occurred caused or substantially contributed to her accident or injuries."

Jobes's Position

---

[9]"A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: . . .  (d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]" Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012).

[10]"A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: . . .  (v) Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care[.]" Miss. Code Ann. § 11-46-9(1)(v) (Rev. 2012).

¶14. In response to MDOT's arguments, Jobes argued that MDOT had submitted "no qualified expert testimony or affidavit to interpret appropriate medical records to support [their claim that Jobes's intoxication was the cause of the accident] or to establish that, even assuming intoxication, that this condition was the sole cause of the accident unrelated in any way to MDOT's lack of adherence to its mandatory obligations relative to the maintenance of this area of Highway 11." Jobes also argued that disputed issues of material fact existed regarding MDOT's "mandatory obligations and duties relative to the area of Highway 11 where [Jobes's] accident occurred . . . ." Jobes highlighted several of MDOT's standard operating procedures regarding pothole repair and argued that there were questions of fact regarding whether those procedures had been followed.

¶15. Jobes also pointed out that, after her accident, MDOT chose to install two additional impact attenuators on the railroad trestles on the opposite sides of the roadway. Jobes argued that there was no way to tell when the "bump" and "slippery when wet" signs close to the accident site were erected, and that the signs "may not" have been in compliance with the Manual of Uniform Traffic Control Devices used by MDOT.

¶16. Finally, Jobes argued that there were no edge stripes on the roadway at the accident site, which also was a violation of the Manual requirements. Among the items attached to Jobes's Response were two affidavits: one from Lumberton resident Michelle Entrekin, who testified that the accident site had standing water "constantly," contained potholes, and was very "bumpy and uneven"; and a second from Benjamin Smith,[11] who testified about the

_____

[11]As mentioned above, Jobes designated Benjamin Smith as an expert, and he identifies himself in his affidavit as an "expert in accident reconstruction." But again,

9

distance of the warning signs from the accident site and that the edging stripe stopped short of the underpass.

¶17.    In response to AGSR's arguments, Jobes argued that AGSR has a common-law duty to maintain its railroad trestles, citing *Illinois Central Railroad Company v. Farris*, 259 F.2d 445, 447-48 (5th Cir. 1958),  and that AGSR had done nothing to the trestles since they were built, despite an increase in traffic and speed limits.  Jobes stated that the trestles were not illuminated in any way, were not marked by any reflective tape or similar devices, and were positioned only six inches from the edge of the roadway.  In sum, Jobes argued that AGSR could not "oversee an overpass with massive support columns built in the mid 1930's and not adjust to the increasing danger its unlighted columns that eliminate any 'clear zone' pose to the increased volume of higher speed vehicles."

Trial Judge's Ruling

¶18.    The trial judge held a hearing on MDOT's and AGSR's motions after the briefing was complete.  After hearing argument from counsel for all parties, the trial judge denied the defendants' motions, stating:

> [I] do have to state that the stream of commerce has evolved enormously since 1934.  And this traffic issue in that location has been a real problem.  And I don't think the railroad can merely stand by and say, We have no responsibility to make additional improvements or alterations to reflect what is going on, on the highway, on a daily basis.  I think that common law would support [Jobes's] position.  I cannot and will not grant summary judgment for the railroad in this particular matter.  I think it's too fact intensive.  I think the railroad had responsibilities and duties and this has been a real issue.

---

Jobes's expert designation does not indicate that Smith was going to testify as to duty, breach, or causation, and she does not argue that he was going to on appeal.

10

[As for MDOT], I absolutely do not believe this was discretionary, in view of, by your own statements, that they have continually had issues at that location. They repeatedly attempted to resolve these issues. Pearl River County is in my five-county district. I traverse from outside of Hattiesburg to Pearl River county a minimum of 80 times a year. I counted it up. I went under that overpass that many times in the past several years. I'm certainly aware of the repeated attempt that [MDOT] attempted to maintain that underpass, all in vain, until they spent almost a year resolving it. I do think there's multiple factual issues. I do think it was a ministerial responsibility of MDOT to cure, and they did not. Therefore, I will deny your motion for summary judgment.

The trial judge later entered an order officially denying the defendants' motions, but he did not expound on his reasons for the denial. Trial was set to begin soon after the motion hearing, but the parties agreed to continue it so that the defendants could seek an interlocutory appeal with this Court. This Court granted the defendants' requests and consolidated the cases.

¶19. AGSR presents three issues on appeal:

(1) Whether Plaintiff's bare assertions are adequate to survive summary judgment in light of the expert testimony offered by [AGSR] that the installation of highway appurtances [sic], such as guardrails or impact attenuators, at the subject grade separation/underpass is beyond the scope of maintenance duties owed by [AGSR] at the subject grade separation/underpass and would fall within the exclusive purview and sole discretion of the Roadway Authority, in this case MDOT;

(2) Whether Miss. Code Ann. § 65-1-175, which bestows upon MDOT exclusive authority to determine the number, type and location of "protective devices" at public roadway/railroad crossings, negates the imposition of any alleged duty owed by [AGSR] with respect to the installation of additional protective devices at the subject underpass; and

(3) Whether Plaintiff's claims against [AGSR] can survive summary judgment when Plaintiff offered no evidence to rebut the expert testimony offered by [AGSR] that Plaintiff's intoxication and resulting impairment was the sole proximate cause of the subject accident and her resulting injuries.

MDOT also presents three issues:

11

(1) Did the Circuit Court err in denying MDOT and MTC's summary judgment motion, when no evidence was presented, via expert or otherwise, that MDOT or MTC's actions or inactions were more probably than not a substantial contributing factor in Jobes' accident or injuries?;

(2) Did the circuit court err in finding that MDOT and MTC were not immune from suit under §11-46-9(1)(v), when it is uncontested that Jobes was very familiar with the conditions of [the] area of the highway in question, and all claimed dangers were known and obvious?; and

(3) Did the circuit court err in finding that MDOT and MTC's placement of traffic-control devices were ministerial functions and, therefore, not subject to the immunity protections of Miss. Code. Ann. § 11-46-9, et seq?

Although stated in a variety of ways, both dDefendants argue simply that the trial judge erred when he did not grant summary judgment in their favor. We agree.

**STANDARD OF REVIEW**

¶20. The standard of review in a summary-judgment case is well-known, and we note that it is especially important in this case. Mississippi Rule of Civil Procedure 56(c) allows summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ***Conrod v. Holder***, 825 So. 2d 16, 18 (Miss. 2002). This Court reviews the denial of a motion for summary judgment *de novo*. ***Harrison v. Chandler-Sampson, Ins., Inc.***, 891 So. 2d 224, 228 (Miss. 2005). When conducting a *de novo* review, this Court must view the evidence in the light most favorable to Jobes, but if the evidence shows that AGSR and MDOT are entitled to judgment as a matter of law, summary judgment should be entered in their favor. ***Conrod***, 825 So. 2d at 18.

¶21. "Under Mississippi law, *bare assertions are simply not enough* to avoid summary judgment. The non-movant *may not rest upon allegations or denials in his pleadings*." ***Travis v. Stewart***, 680 So. 2d 214, 218 (Miss. 1996) (citation omitted) (emphasis added). "If

12

the party opposing the motion is to avoid entry of an adverse judgment, he or she must bring forth evidence which is legally sufficient to make apparent the existence of triable fact issues. *Summary judgment is mandated where the nonmoving party fails to show evidence sufficient to establish the existence of an essential element to his case.*" **Sligh v. First Nat'l Bank of Holmes Co.**, 735 So. 2d 963, 965-66 (Miss. 1999) (citation omitted) (emphasis added).

## ANALYSIS

### I.    Jobes's Claims Against MDOT

¶22.    As mentioned above, Jobes alleges that MDOT was negligent in several different respects, and we separate those claims into categories for purposes of discussion. The following claims all relate to MDOT's alleged duty to maintain and/or repair Highway 11 and the area around the accident site specifically:

> **Failing to keep the road in a reasonably safe condition;**
>
> **Allowing the roadway to persist in a defective and substandard condition, despite actual or constructive knowledge of the defective and substandard condition; and**
>
> **Failing to construct and/or maintain the roadway in a reasonably safe condition in accordance with industry and highway safety standards.**

¶23.    In light of this Court's recent decision in **Little v. Mississippi Department of Transportation**, 129 So. 3d 132 (Miss. 2013), we cannot agree with MDOT's argument before the trial court that its duty to maintain Highway 11 is discretionary. This Court specifically stated in **Little** that: "Because Section 65-1-65 requires [MDOT] to maintain and repair state highways, that duty—and all acts in furtherance of that duty—are ministerial unless, as in **Montgomery**, another statute makes a particular act discretionary . . . [MDOT]

13

is not entitled to discretionary-function immunity for failure to properly maintain and repair highways because that function is ministerial."[12] *Little*, 129 So. 3d 132 at 138.

¶24. So we agree with Jobes that her claims regarding MDOT's failure to repair and maintain Highway 11 are not barred as a matter of law by the discretionary-function exception to the Mississippi Tort Claims Act. But that does not end the inquiry. Jobes still must "show evidence sufficient to establish the existence of an essential element to [her] case"—she must show that MDOT had a specific duty, it breached that duty, and that the breach proximately caused her injury. *Kroger Co. v. Knox*, 98 So. 3d 441, 443 (Miss. 2012). We find that Jobes has shown evidence of none of these things.

¶25. While Jobes does generally allude to some of MDOT's standard operating procedures related to potholes, warning sign placement, and pavement edging in her Response to MDOT's Motion, she has presented absolutely no *evidence* regarding MDOT's exact duties, or whether those duties were breached. Additionally and perhaps more importantly, Jobes has provided no evidence that the alleged negligence caused or contributed to her injuries. On the contrary, her deposition testimony highlights the glaring *lack* of causation evidence:

> Q: Has anybody told you how they think the accident happened?
> A: No. Well, people have their [theories] and speculations. I've been told so many different things.
> Q: Tell me what has been the theories or the speculation about how the accident happened.
> A: I was told that maybe I hydroplaned. I was told that maybe I had a stroke. I would assume that would be medically proven though at the time of the wreck. I was told that maybe I fell asleep. And then it was brought to my

---

[12]In fairness to MDOT, we note that it seems to have abandoned this argument on appeal. In its brief, it argues only that its placement of traffic-control devices was discretionary.

14

attention [the intoxication]. And so no doctors, nobody has told me [a] for sure answer due to the fact of lack of memory, and nobody has given me the answers I really want.

. . .

Q: Do you think you could have fallen asleep at the wheel that night as tired as you were?

A: Anything is possible, yes.

Q: You don't know because you don't remember it?

A: Yeah.

Q: You said hydroplaned. When you drove in that morning, you said you don't remember –

A: Right.

Q: – you don't have a memory of it, so you don't know whether –

A: Yeah. They are all theories of what people think happened.

. . .

Q: Do you think if you were on antianxiety medication – the medical records say what they say. You don't have a memory of it. But do you think that based on your experience and understanding, do you think that being – if you were on that medication, it's in your system. If you were on that medication that that might have intensified the impact of the alcohol that you did drink that night?

A: Yes.

Q: Do you think that that interaction which in your experience, if you hadn't had that interaction based on all these years of driving that road at that period of time that night and everything else, maybe this accident wouldn't have happened?

A: Or that severe.

Q: You still think – I'm asking you. Do you still think – you still think you would have wrecked that night if you hadn't had –

A: Who knows, because we – nobody really knows exactly. I mean, when there's, you know theories, speculation, but who knows . . . .

¶26. We find that this testimony fails to offer any evidence of what actually caused Jobes' accident.[13] And Jobes has likewise presented no evidence that the alleged negligence by MDOT contributed to the *severity* of her injuries—in other words, she has provided no evidence that the lack of impact attenuators or guardrails made the accident worse. In short, Jobes has presented absolutely no evidence regarding MDOT's duty, any breaches of those

[13]We reiterate that Jobes has no expert for trial.

15

duties, or that the breaches caused or contributed to her injuries.

> **Failing to provide an adequate "clear zone" or shoulder at the site of the accident; and**
>
> **Failing to provide adequate and necessary crash cushions at the site of the accident.**

¶27.    In addition to Jobes's failure to provide evidence of duty, breach, and causation as discussed above, these two allegations involve discretionary functions, and MDOT is therefore immune from liability altogether.  Mississippi Code Section 65-1-175 states, in pertinent part:

> The Mississippi Department of Transportation shall have power, upon its own motion, or upon complaint, and after having made proper investigation and after notice and hearing, if requested, to require the installation of adequate and appropriate luminous reflective warning signs, luminous flashing signals, crossing gates illuminated at night, or other warning devices *in order to promote the health and safety of the public* . . . The department *shall have authority to determine* the number, type and location of such signs, signals, gates or other protective devices which shall conform *as near as may be* with generally recognized national standards,[14] . . .

Miss. Code Ann. § 65-1-175(3) (emphasis added).  We find that the statute above allows MDOT, in its discretion, to determine the appropriate type, number, and location of

---

[14]Tellingly, Jobes's counsel admitted at the summary judgment hearing that "[t]here's no testimony, no evidence what those national standards are at this time.  That is an issue for resolution at some point in time."

protective devices at railroad crossings,[15] making it immune from liability for these two claims under Section 11-46-9(1)(d).

> **Failing to erect and/or maintain appropriate and reasonable signs, signals, warning devices, illumination devices, or guardrails and/or barriers at the site of the accident despite actual or constructive notice of the absence and/or inadequate condition of the existing devices.**

¶28. Again, proof of causation aside, we find that this allegation also involves a discretionary function, and that MDOT is therefore immune from liability altogether. In *Little*, this Court stated: "Because Section 65-1-65 requires [MDOT] to maintain and repair state highways, that duty—and all acts in furtherance of that duty—are ministerial *unless, as in Montgomery,*[16] another statute makes a particular act discretionary.*" *Little*, 129 So. 3d at 138 (emphasis added).

¶29. Here, we find that there is another statute that makes the placement of traffic-control devices discretionary: "The commissioner of public safety and the state highway commission shall place and maintain such traffic-control devices conforming to its manual and specifications, upon all state and county highways *as it shall deem necessary* to indicate and to carry out the provisions of this chapter or to regulate, warn, or guide traffic." Miss. Code Ann. § 63-3-303 (Rev. 2013) (emphasis added). We find that the statute above allows

---

[15]In ***Illinois Central Railroad Co. v. Farris*** (which is the same case relied on by Jobes to assert that AGSR has a common-law duty to maintain its railroad crossings), the Fifth Circuit Court of Appeals stated: "Narrowly, the term 'crossing' applies to an intersection of a railroad and a road or highway in the same plane. More broadly, the term includes overpasses, underpasses, bridges or other means by which one crosses from one side of a railroad to the other." Illinois Cent. R.R. Co. v. Farris, 259 F.2d 445, 447 n.2 (5th Cir. 1958).

[16]***Miss. Transp. Comm'n v. Montgomery***, 80 So. 3d 789 (Miss. 2012).

17

MDOT, in its discretion, to determine the appropriate type, number, and location of traffic-control devices, making it immune from liability for this claim under Section 11-46-9(1)(d).

> **Failing to protect or warn of a dangerous condition at the site of the collision of which defendants had notice, and adequate opportunity to issue appropriate warnings.**

¶30. Jobes specifically states in her brief that she is "not pursuing a claim based on a failure to warn" in this appeal. We therefore decline to address this cause of action.

## II. Jobes's Claims Against AGSR

> **Failing to keep and maintain the railroad trestle supports in a reasonably safe condition;**

> **Failing to post adequate warning devices;**

> **Failing to undertake timely and reasonable repairs; and**

> **Failing to maintain the trestle supports in a [reasonably] safe position.**

¶31. Jobes argues that AGSR has a continuing common-law duty to maintain the railroad crossing. It is true that the Fifth Circuit has stated that: "A railroad company has an affirmative duty to maintain highway crossings so as 'to fulfill its obligation of affording proper security for life and property. Thus the railroad must so construct trestles as to afford reasonably sufficient clearance or headway for ordinary vehicular traffic.'" *Illinois Cent. R.R. Co. v. Farris*, 259 F.2d 445, 447 (5th Cir. 1958).

¶32. But we find that any common-law duty AGSR may have had to maintain and repair its railroad trestles and to place warning signs has been relegated to MDOT, pursuant to Mississippi Code Section 65-1-175(1): "The jurisdiction of the Mississippi Department of Transportation *shall be exclusive* with respect to public roadway/railroad crossings either at

18

grade or otherwise except to the extent that its jurisdiction is preempted by valid federal statute, regulation or order." (Emphasis added.) Jobes has presented no federal statue, regulation, or order that would preempt MDOT's jurisdiction. So we find that any common-law duty that AGSR might have had to repair, maintain or warn[17] no longer exists.

¶33. Moreover, as discussed above, Jobes simply has offered no evidence of what that common-law duty encompasses, or how AGSR breached that duty. We agree with AGSR's argument that the "tasks of defining, distinguishing between and analyzing the specific duties owed to the motoring public by [AGSR], a participant in one of the most heavily regulated industries in this country, and MDOT, a governmental roadway authority, at this grade separation are beyond the capabilities of the average lay person and require an intimate understanding of industry specific standards and terminology." In short, highly technical issues would have to be addressed, and Jobes simply has presented no evidence that would make this a fact question for the jury.[18]

¶34. And finally, Jobes's claims against AGSR suffer from the same lack of evidence of causation as do her claims against MDOT. Incredibly, Jobes argues in her brief that:

> The affidavit from [AGSR's] accident re-constructionist that Ms. Jobes'
> actions were the <u>sole</u> proximate cause of the accident, is not, as [AGSR]

---

[17]As quoted above, Section 65-1-175(3) gives MDOT full power to place warning signs and other protective devices at railroad crossings: "The department shall have authority to determine the number, type and location of such signs, signals, gates or other protective devices which shall conform as near as may be with generally recognized national standards . . . ." Miss. Code Ann. § 65-1-175(3) (Rev. 2012).

[18]"The general rule in Mississippi is that expert testimony is not required *where the facts surrounding the alleged negligence are easily comprehensible to a jury*." ***Wal-Mart Stores, Inc. v. Johnson***, 807 So. 2d 382, 388 (Miss. 2001) (citing ***Hammond v. Grissom***, 470 So. 2d 1049, 1052 (Miss.1985)) (emphasis added).

claims, reliable. This expert reaches his conclusion as to causation without appropriate factual support; he simply equates impairment with loss of control without any consideration whatsoever of the role, if any, that the degraded condition of the road surface played in Ms. Jobes' vehicle veering across the roadway at this particular spot after having already driven approximately 25 miles from Hattiesburg without incident. In short, he only considered one conclusion and failed to consider, evaluate and eliminate other plausible and reasonable causes of the collisions, notably, the substandard condition of the paved surface of [Highway 11] as it passed under the [AGSR] trestle . . . The [AGSR] affidavit further makes no findings with respect to the effect an impact attenuator designed to prevent head-on collisions, and/or a shoulder unencumbered by massive, immovable columns, would have had on the severity of the injuries sustained by Ms. Jobes in this head-on collision. While the affidavit does make the claim that Ms. Jobes' acts were the sole proximate cause of the accident, no where does this expert address the issue of the extent to which an impact attenuator would have effected [sic], lessened or reduced the severity of the injuries sustained in this head-on impact.

¶35. Jobes has completely reversed the parties' relative burdens of proof. It is not AGSR's burden to prove that its alleged negligence was *not* a substantial factor in causing Jobes's injuries; rather, it is Jobes's burden to prove that it was—a burden she has not even attempted to meet. As AGSR succinctly stated: "[Jobes] failed to articulate what specific duties she alleges were owed by [AGSR], much less how [AGSR] breached such alleged duties or even that such alleged breaches proximately caused or contributed to her injuries."

## CONCLUSION

¶36. We find that all of Jobes's claims against the defendants fail, either because defendants are immune from liability (in MDOT's case), or because she has wholly failed to "show evidence sufficient to establish the existence of the essential elements" of her claims. We reverse the ruling of the Lamar County Circuit Court and enter summary judgment in favor of the defendants.

¶37. **REVERSED AND RENDERED.**

20

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**