# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01418-COA

**MAX LEIGH BLAIR, INDIVIDUALLY AND ON BEHALF OF THE WRONGFUL DEATH STATUTORY BENEFICIARIES OF HEATHER MICHELLE BLAIR AND AS ADMINISTRATOR OF THE ESTATE OF HEATHER MICHELLE BLAIR, DECEASED**

**APPELLANT**

**v.**

**JACKSON COUNTY, MISSISSIPPI**

**APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/17/2024 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT G. GERMANY |
| ATTORNEYS FOR APPELLEE: | JAMES H. COLMER JR. |
| | JACKYE C. BERTUCCI |
| | TRISTAN R. ARMER |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 05/12/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND WEDDLE, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Max Leigh Blair's wife, Heather Michelle Blair, was struck and killed by a motorist when she was walking across Lemoyne Boulevard in Jackson County, Mississippi.  Blair brought a wrongful death action under the Mississippi Tort Claims Act (MTCA) against Jackson County.[1]  The Jackson County Circuit Court granted summary judgment in Jackson

---

[1] Blair also sued the Jackson County Board of Supervisors (Board).  The Board was dismissed by stipulation on July 28, 2021.

County's favor, determining that it is protected by discretionary-function immunity. Blair appeals. Upon our de novo review, we likewise find that Jackson County was entitled to discretionary-function immunity. Accordingly, we affirm.

**PROCEDURAL HISTORY AND STATEMENT OF FACTS**

¶2. On December 15, 2020, Blair, individually and on behalf of Heather's wrongful death beneficiaries and as the administrator of her estate, filed a complaint against Jackson County for Heather's death, after she was struck and killed by a motorist when she was attempting to walk across Lemoyne Boulevard, west of McCann Road. The accident happened about 6:00 p.m. on the evening of December 19, 2019. Blair alleged Jackson County was liable for failing to adequately light the area where the accident occurred, failing to install a pedestrian crosswalk in that area, and "failing to properly inspect the area, note and replace the missing speed limit sign."

¶3. Jackson County filed its answer and defenses, specifically asserting discretionary-function immunity pursuant to Mississippi Code Annotated section 11-46-9(1)(d) (Rev. 2019) of the MTCA.[2] After the parties exchanged some written discovery, Jackson County moved for summary judgment, asserting that it was entitled to discretionary-function immunity for the three claims Blair asserted in the complaint.

¶4. Blair conceded the inadequate lighting and crosswalk claims in his response, but he

---

[2] Section 11-46-9(1)(d) provides immunity to "[a] governmental entity and its employees acting within the course and scope of their employment or duties" for "any claim . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." Miss. Code Ann. § 11-46-9(1)(d).

2

continued to assert that "the [County] violated Miss. Code Ann.§ 11-46-9 (Supp. 2016) . . . in failing to properly inspect the area, note and replace the missing speed limit sign." Blair attached two exhibits to his opposition: the Mississippi Uniform Crash Report (UCR) completed by deputies from the Jackson County Sheriff's Office who arrived at the scene of the accident (Trial Exhibit 1), and a spreadsheet produced by Jackson County entitled: "Lemoyne Blvd. Sign Maintenance 2017-24" (Trial Exhibit 2).

¶5.    Regarding Exhibit 1, page 5 of the UCR contains a box entitled "Traffic Control Device Types and Statuses," with three columns entitled, respectively, "Traffic Control Device Types," "Devices Present," and "Devices Inoperative or Missing." A "000" code, defined as "None," was entered under the "Devices Present" column. A "980" code, defined as "Other," was entered under the "Devices Inoperative or Missing" column.

¶6.    Page 11 of the UCR contained a crash narrative completed by two deputies at the scene. The crash narrative contained no information concerning "missing" signs or devices. Below the crash narrative were two horizontal dotted lines, setting off the following disclaimer: "Disclaimer: All information below this line is auto-generated from report data." Below that disclaimer was the statement: " . . . Traffic Control Devices Inoperative or Missing: Speed Limit Sign."

¶7.    The "Jackson County Lemoyne Boulevard" maintenance report (Trial Exhibit 2) contained entries dated February 18, 2021, indicating that a "sign and traffic control study" for the entire length of Lemoyne Boulevard had been performed. Following these entries, entries on March 16, 2021, provide: "L[e]moyne Blvd intersected with McCann Rd install

3

new speed limit signs on new post."

¶8.     The County filed a rebuttal memorandum together with an affidavit from Joe O'Neal, the Road Manager for Jackson County who had held that position since January 1990. O'Neal stated that at the time of the accident, based upon his "own personal knowledge[,] . . . there was no 'missing' speed limit sign or any other kind of sign 'missing' on Lemoyne Boulevard, in the sense that a sign was previously there and then was absent." O'Neal further stated, "On March 16, 2021, a new speed limit sign was installed on a new post at the intersection of Lemoyne Blvd. and McCann Rd. . . .   This was not the replacement of a sign, but rather a new sign placed at that intersection."

¶9.     The circuit court held a hearing on Jackson County's motion, and post-hearing the parties submitted supplemental briefing regarding the admissibility of the UCR and whether the issue of proximate cause was properly before the court.

¶10.    Following briefing, oral argument, and supplemental briefing, the circuit court found that Blair failed to raise a genuine issue of material fact whether "there was a missing speed limit sign [on Lemoyne Boulevard at the time of the accident.]"  The circuit court further found that, in any event, "because [the County] has discretion as to where speed limit signs are placed, [the County] is immune in this case[.]"  Accordingly, the circuit court granted Jackson County's summary judgment motion and dismissed Blair's lawsuit with prejudice.

¶11.    Blair appeals, asserting one issue on appeal: Whether the circuit court erred in granting Jackson County's motion for summary judgment.

**STANDARD OF REVIEW**

4

¶12.   We apply "a de novo standard of review to a grant of summary judgment and to issues involving the interpretation and application of the MTCA." *Slade v. City of Lumberton*, 395 So. 3d 1277, 1280 (¶8) (Miss. Ct. App. 2024) (internal quotation marks omitted).   In particular, "immunity is a question of law and is a proper matter for summary judgment." *Id.* at 1281 (¶8) (internal quotation marks omitted).  Pursuant to Mississippi Rule of Civil Procedure 56(c), "[summary] judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).  In this regard, we must view the evidence "in the light most favorable to the party against whom the motion has been made." *Slade*, 395 So. 3d at 1281 (¶8) (internal quotation mark omitted).  "The mere existence of some alleged factual dispute between the parties, however, will not defeat an otherwise properly supported motion for summary judgment; the dispute must be genuine, and the facts must be material." *Smith v. City of Southaven*, 308 So. 3d 456, 461 (¶16) (Miss. Ct. App. 2020) (internal quotation marks omitted).

### DISCUSSION

### Discretionary-Function Immunity

¶13.   Blair asserts that Jackson County is liable for Heather's death based on the County's alleged failure to "note and replace [a] missing speed limit sign [in the area where the accident occurred]."  According to Blair, Jackson County is not protected by discretionary-function immunity in this instance because, "[w]hile the decision whether to initially place

a speed limit sign . . . may have been discretionary, the inspection and replacement was not."

¶14.    Upon our de novo review, we find that even assuming there was a "missing speed limit sign," Blair's claim against Jackson County is precluded by discretionary-function immunity under section 11-46-9(1)(d).  We therefore conclude that the circuit court did not err in granting summary judgment in Jackson County's favor on this basis.

### A.    Applicable Law

¶15.    "[T]he MTCA provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit."  *Horton ex rel. Est. of Erves v. City of Vicksburg*, 268 So. 3d 504, 508 (¶13) (Miss. 2018).  The MTCA, however, "also provides immunity to governmental entities in specified circumstances, enumerated in section 11-46-9(1) (Rev. 2019)."  *Short v. Polles*, 416 So. 3d 118, 129 (¶52) (Miss. Ct. App. 2025) (internal quotation marks omitted), *reh'g denied* (Aug. 19, 2025).

¶16.    As applied here, section 11-46-9(1)(d) provides immunity for a government entity and its employees from claims that are "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]"  Miss. Code Ann. § 11-46-9(1)(d).

¶17.    In order "[t]o determine if actions are covered by discretionary-function immunity, we apply the public-policy function test resurrected in *Wilcher* [*v. Lincoln Cnty. Bd. of Supervisors & City of Brookhaven*,] 243 So. 3d [177,] 187 [(¶30) (Miss. 2018)]."  *Smith v. Miss. Transp. Comm'n*, 292 So. 3d 231, 233-34 (¶8) (Miss. 2020).

6

¶18.    The public-policy function test has two elements: "first, whether the alleged wrongful act involves an element of choice or judgment and, if so, then, second, whether the choice or judgment had a bearing on public policy." *Id.* at 234 (¶8).  As the supreme court explained, "[d]ecisions that bear on public policy are decisions made by individuals charged with responsibility for making those decisions that consider economic, political, or social grounds." *Id.*  "The purpose of this test is to discern between actual policy decisions of government made by policymakers versus simple acts of negligence by government employees or agents." *Id.*; *see also J.S. ex. rel. Segroves v. Ocean Springs Sch. Dist.*, 414 So. 3d 47, 61 (¶47) (Miss. 2025) (recognizing that the supreme court "has established that . . . [in determining whether discretionary-function immunity applies], we must distinguish between real policy decisions made by policymakers and simple negligence").

##    B.    Application of the Public-Policy Function Test

¶19.    Section 63-3-305 governs the placement and maintenance of traffic-control devices for local authorities.  This statute specifically provides that "[l]ocal authorities in their respective jurisdictions shall *place and maintain* such traffic control devices upon highways under their jurisdiction *as they may deem necessary* . . . to regulate, warn, or guide traffic." Miss. Code Ann. § 63-3-305 (Rev. 2022) (emphasis added).  Based upon this statute and the authorities discussed above, we find that even if there was a "missing speed limit sign" at the scene of the accident, Jackson County is still immune.

¶20.    We begin by addressing Blair's assertion that "replacement" differs from "place and maintain" such that section 63-3-305 is not applicable here.  We disagree.  "[I]t is

7

well-settled law in Mississippi that the 'placement *or non-placement* of traffic control devices or signs is a discretionary governmental function.'" *Aultman v. Lawrence County*, 95 So. 3d 702, 705 (¶7) (Miss. Ct. App. 2012) (emphasis added) (quoting *Barrentine v. Miss. Dep't of Transp.*, 913 So. 2d 391, 393 (¶8) (Miss. Ct. App. 2005)). Indeed, in *Wall v. City of Gulfport*, 252 So. 2d 891 (Miss. 1971), the supreme court held that the City's decision whether to replace a stop sign that had been blown away by a hurricane was a governmental function, and thus the City was not liable for failing to replace it. *Id.* at 893. In particular, the supreme court held that the City's decision "whether to *replace* a traffic control device . . . which has been completely removed is a governmental function," and thus the City was immune from liability. *Id.* (emphasis added);[3] *see Barrentine*, 913 So. 2d at 393 (¶8) (citing *Wall* for this point). In light of these cases, we find that the language "place and maintain" found in section 63-3-305 encompasses the alleged "replacement" of the speed limit sign in this case.

¶21.    We next turn to the application of the two-part public-policy function test "resurrected in *Wilcher*." *Smith*, 292 So. 3d at 233-34 (¶¶8-9). The supreme court applied this test in *Smith*. *Id.* There, Rhonda Smith was injured when she rear-ended a loaded logging truck that had slowed down when the driver noticed a Mississippi Transportation Commission

---

[3] Blair attempts to cast doubt on the supreme court's holding in *Wall* because that case was decided before the MTCA went into effect. We are unconvinced by this point. As Justice Coleman noted in *Smith*, "discretionary-function immunity preexisted the Tort Claims Act. . . . In short, the Tort Claims Act . . . carried forward the *already-existing* discretionary-function immunity." *Smith*, 292 So. 3d at 236 (¶19) (Coleman, J., concurring) (emphasis added). We find nothing in subsequent caselaw that abrogates this immunity as applied to the circumstances here.

8

(MTC) employee holding a stop sign on the side of a highway. *Id.* at 233 (¶2). Smith alleged, among other claims, that the MTC was negligent in determining the placement of traffic-control devices. *Id.* at (¶4). The supreme court determined that discretionary-function immunity applied to these claims, as we discuss below. *Id.* at 233-34 (¶¶8-9).

¶22. In applying the first element of the public-policy function test—"whether the alleged wrongful act involves an element of choice or judgment"—the supreme court examined Mississippi Code Annotated section 63-3-303.[4] *Id.* at 234 (¶8). Relevant here, section 63-3-303 contains language substantively identical to section 63-3-305, except that it sets forth the MTC's (rather than local authorities') authority regarding the placement and maintenance of traffic control devices. *Id.* at (¶9). The supreme court held that "[section 63-3-305]'s assignment of authority clearly meets the first prong of the [public-policy function] test because it is phrased as a choice or decision." *Id.*

¶23. Similarly, in *Alabama Great Southern Railroad Company v. Jobes*, 156 So. 3d 871 (Miss. 2015), the supreme court found that the Mississippi Department of Transportation (MDOT) was entitled to discretionary-function immunity with respect to plaintiff's claim that MDOT failed to maintain "reasonable signs, signals, [or] warning devices" in the area where she was injured after crashing into a concrete railroad trestle. *Jobes*, 156 So. 3d at 873, 881-82 (¶¶1, 27-29). The supreme court recognized that the identical language, "as it shall deem necessary," contained in section 63-3-303, "allows MDOT, in its discretion, to determine the

---

[4] Section 63-3-303 provides that "[t]he commissioner of public safety and the state highway commission shall place and maintain such traffic-control devices . . . upon all state and county highways as it shall deem necessary . . . to regulate, warn, or guide traffic." Miss. Code Ann. § 63-3-303 (Rev. 2022).

appropriate type, number, and location of traffic-control devices, making it immune from liability for this claim under Section 11-46-9(1)(d)." *Id.* at 882 (¶29).

¶24. As in these cases, we likewise find that section 63-3-305, which delineates Jackson County's authority to "place and maintain" traffic control devices "is phrased as a choice or decision" and, thus, "clearly meets the first prong of the [public-policy function] test." *Smith*, 292 So. 3d at 234 (¶9); *see Jobes*, 156 So. 3d at 882 (¶29).

¶25. In applying the second element of the public-policy function test—"whether the choice or judgment had a bearing on public policy"—the *Smith* court "reiterate[d] that 'installing warning lights or signs at dangerous intersections' and other instances of installation of traffic-control devices do carry with them economic, political, or social concerns." *Smith*, 292 So. 3d at 234 (¶9) (quoting *Wilcher*, 243 So. 3d at 187 (¶30)). The supreme court then concluded that "any claims Smith brings that the MTC through its policymakers erred in its decision regarding placement of traffic-control devices are ineffective because the MTC can invoke discretionary-function immunity." *Id.*

¶26. We find that the same analysis applies here. As noted, section 63-3-305, like section 63-3-303, allows Jackson County, "as it deems necessary" to determine "the appropriate type, number, and location of traffic-control devices," *see Jobes*, 156 So. 3d at 882 (¶29). And, as plainly stated in *Smith*, this function "carr[ies] with [it] economic, political, or social concerns." *Smith*, 292 So. 3d at 234 (¶9). We find that this is particularly true here, where the Jackson County maintenance report for Lemoyne Boulevard, attached to Blair's opposition as Exhibit 2, shows that a "sign and traffic control study" for the entire length of

Lemoyne Boulevard was performed in February 2021, just prior to the March 16, 2021 installation of a "new speed limit sign[] on a new post" near the intersection of Lemoyne Boulevard and McCann Road. Accordingly, we find that the circuit court did not err in granting summary judgment based on discretionary-function immunity.

¶27. Blair asserts, however, that *Wilcher* supports his claim that Jackson County's alleged failure to "replace" a "missing speed limit sign" is not protected by discretionary-function immunity. We are unconvinced by Blair's argument. Although the supreme court addressed the evolution and application of the discretionary-function immunity principles in *Wilcher*, the court also specifically noted that whether "the placement of traffic-control devices is a 'discretionary function' under Section 63-3-305 . . . [was] not the government function being challenged" in that case. *Wilcher*, 243 So. 3d at 187 (¶31). As such, on its facts, we find *Wilcher* inapplicable here.

¶28. To explain, in *Wilcher*, Samuel Wilcher was driving at night and was injured "when his vehicle suddenly crashed into a big hole." *Id.* at 181 (¶5). The hole was left in the road where Lincoln County (County) and the City of Brookhaven (City) employees had been "repairing or constructing a bridge." *Id.* There were no warning signs or any other devices warning motorists of the hole. *Id.* Wilcher sued the County and the City for negligence. *Id.* at 181 (¶6).

¶29. After analyzing the factual allegations of Wilcher's complaint, the supreme court, as noted, explicitly pointed out "*that the placement or lack of placement of a traffic-control device is not the government function being challenged*" by Wilcher; instead, "the allegedly

11

tortious act was the construction crew's alleged failure to barricade or warn against the significant drop-off in the road—*a condition it created*." *Id.* at 187-88 (¶¶31-32) (emphasis added). The supreme court added, "This alleged failure . . . was not the result of a policy decision. Rather, if indeed there was such a failure, it was the result of straight-up negligence." *Id.* at 188 (¶32). As the supreme court concluded, "Wilcher has alleged a simple act of negligence, and not a real policy decision, caused his injury. Therefore, the County and City cannot take refuge in discretionary-function immunity." *Id.* at 188 (¶35) (quotation marks and brackets omitted).

¶30. In contrast, Blair asserts that discretionary-function immunity does not apply here because Jackson County allegedly failed to "replace" a "missing speed limit sign"—a function squarely within the County's discretionary authority to perform pursuant to section 63-3-305. As we have detailed above, Jackson County's decision regarding the placement or non-placement of a speed limit sign was a discretionary decision "carry[ing] with [it] economic, political, or social concerns." *Smith*, 292 So. 3d at 234 (¶9). Thus, unlike Lincoln County and the City of Brookhaven in *Wilcher*, we find that Jackson County is entitled to discretionary-function immunity in this case.

¶31. In sum, for the reasons and pursuant to our analysis set forth above, we find no error in the circuit court granting summary judgment in Jackson County's favor based upon discretionary-function immunity. Accordingly, we affirm the judgment.

¶32. **AFFIRMED.**

**BARNES, C.J., WESTBROOKS, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WILSON, P.J., AND McDONALD, J., CONCUR**

**IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., NOT PARTICIPATING.**