# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-00725-SCT

*CYNTHIA RENEE CRIDER*

*v.*

*DESOTO COUNTY CONVENTION AND
VISITORS BUREAU*

DATE OF JUDGMENT:    01/12/2015
TRIAL JUDGE:    HON. GERALD W. CHATHAM, SR.
TRIAL COURT ATTORNEYS:    JOSEPH M. SPARKMAN, JR.
    MICHAEL C. McLAREN
COURT FROM WHICH APPEALED:    DESOTO COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:    GREGORY C. MORTON
    JOSEPH M. SPARKMAN, JR.
ATTORNEYS FOR APPELLEE:    MICHAEL CHRISTOPHER McLAREN
    KARI L. SUTHERLAND
NATURE OF THE CASE:    CIVIL - PERSONAL INJURY
DISPOSITION:    AFFIRMED - 08/11/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     While visiting the DeSoto County Civic Center, Cynthia Crider stepped in a hole that was obscured by grass. She sued the DeSoto County Convention and Visitors Bureau (the Bureau), which operates the Civic Center. The circuit judge granted summary judgment to the Bureau based on discretionary-function immunity. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In May 2008, Crider attended a high-school graduation at the Civic Center.  At the ceremony's conclusion, Crider exited the Civic Center and proceeded across a grassy area to her car.  As she crossed, Crider stepped in a hole obscured by overgrown grass.  She fell and broke her ankle.

¶3.     Crider sued the Bureau, alleging that it failed to maintain the grassy area in a safe condition.  The Bureau moved for summary judgment, claiming it enjoyed Mississippi Code Section 11-46-9(1)(v)'s immunity from certain premises-liability claims.  The Bureau then filed a supplemental motion for summary judgment, asserting discretionary-function immunity under Mississippi Code Section 11-46-9(1)(d).

¶4.     In granting summary judgement, the trial judge reasoned that the Bureau enjoyed discretionary-function immunity because no statute mandated that it operate a civic center and because Crider failed to show any "laws or regulations . . . which would remove the Defendants' particular acts (or inaction) from the 'umbrella of discretionary function immunity.'"  Crider appealed.

## ANALYSIS

¶5.     On appeal, Crider argues that the circuit judge erred by failing to apply the governmental/proprietary function test which, she claims, precludes immunity.  She further argues that the Bureau was not engaged in a discretionary function, and that this Court should overrule its decision in ***Brantley v. City of Horn Lake***[1] and return to the two-part, public-

---

[1] ***Brantley v. City of Horn Lake***, 152 So. 3d 1106 (Miss. 2014).

policy-function test.  Finally, she argues that, even if the Bureau enjoyed immunity, we should hold that it waived that immunity to the extent it was covered by liability insurance.

¶6.     This Court previously and unambiguously has held that, by enacting the Mississippi Tort Claims Act, the Legislature abrogated the governmental/proprietary function test.[2]  It also divested this Court of any authority to graft Crider's proposed liability-insurance waiver into the statute.[3]  And this Court repeatedly has rejected[4] Crider's argument that we should return to the two-part, public-policy-function test adopted by the United States Supreme Court in applying the Federal Tort Claims Act, whose provisions materially differ from the Mississippi Tort Claims Act.[5]

---

[2] ***City of Tupelo v. Martin***, 747 So. 2d 822, 828 (Miss. 1999) (citing ***Parker v. City of Philadelphia***, 725 So. 2d 782, 784 (Miss. 1998); ***White v. City of Tupelo***, 462 So. 2d 707, 708 (Miss. 1984)) ("Prior to the enactment of the MTCA, we did use the governmental/proprietary function test in applying sovereign immunity to municipalities. However, with the enactment of the MTCA, that test is no longer applicable to claims subject to the MTCA except to the extent which it may be incorporated in the provisions of the MTCA. We find no such incorporation.").

[3] ***State v. Heard***, 246 Miss. 774, 781, 151 So. 2d 417, 420 (1963) ("Ordinarily, an exception must appear plainly from the express words or necessary intendment of the statute. Where no exception in positive words is made, the presumption is the legislature intended to make none.").

[4] ***Miss. Transp. Comm'n v. Adams***, 2016 WL 3091194, *9–10 (Miss. June 2, 2016) (Maxwell, Justice, concurring); ***Crum v. City of Corinth***, 183 So. 3d 847, 853–55 (Miss. 2016) (Randolph, Presiding Justice, concurring); ***Boroujerdi v. City of Starkville***, 158 So. 3d 1106, 1115–17 (Miss. 2015) (Waller, Chief Justice, dissenting); ***Brantley***, 152 So. 3d at 1118–23 (Waller, Chief Justice, dissenting).

[5] As we pointed out in ***Brantley***:
the Mississippi Tort Claims Act contains a requirement not present in the Federal Tort Claims Act: that the immunity attaches to a "governmental entity and its employees acting within the course and scope of their employment or duties . . . ."

¶7.     The concurrence chides the **Brantley** majority based on its erroneous belief that Section 2680 expressly incorporates Section 1346(b).  This is both legally and factually incorrect.

¶8.     Section 2680 does not "expressly incorporate" Section 1346(b), and nothing in the language of either statute suggests that Section 2680's grant of immunity is limited to the cases mentioned in Section 1346(b).  Section 2680 states:

> The provisions of this chapter **and** section 1346(b) of this title shall not apply to:
>> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.[6]

¶9.     By employing the word "and" in its opening sentence, Section 2680 exempts certain types of claims from two distinct statutory provisions: (1) the Tort Claims Act's waiver of immunity ("this chapter") and (2) Section 1346(b)'s grant of federal district-court jurisdiction.  Conversely, our statute requires that acts occur in the course and scope of the actor's employment before discretionary-function immunity attaches.

---

**Brantley**, 152 So. 3d at 1112 (quoting Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012)).

[6] 28 U.S.C. § 2680 (emphasis added).

4

¶10. ***Brantley*** is settled law, and we reject the dissent's apocalyptic characterization of it.[7]

The only question to be addressed is whether the circuit judge properly applied its requirements to the facts of this case.[8]  Because he did, we affirm.

¶11. Mississippi Code Section 11-46-9(1)(d) addresses discretionary-function immunity:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.[9]

¶12. ***Brantley*** addressed and clearly set forth the proper test for discretionary-function immunity, explaining that we first

> consider the broadest function involved in order to make a baseline determination of whether the overarching function is discretionary or ministerial.  The Court then must examine any narrower duty associated with the activity at issue to determine whether a statute, regulation, or other binding directive renders that particular duty a ministerial one, notwithstanding that it may have been performed within the scope of a broader discretionary function.[10]

---

[7] The dissent suggests that "[t]he sovereign State and its subdivisions are left, in many situations, unable to know, before engaging in certain conduct, whether their conduct is protected by immunity."  We reject the notion that "the sovereign and its subdivisions" are incapable of conforming their conduct to statutory and regulatory requirements. *See*  Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012).

[8] The dissent boldly speculates that "[f]ollowing ***Brantley*** and its progeny, only a few attorneys are capable of evaluating claims and/or defenses related to discretionary immunity."  We find no difficulty in evaluating such claims, and we note that the ***Brantley*** analysis included in the learned trial judge's order, as well as the brief submitted by counsel for the appellee, both applied the law exactly as announced in ***Brantley*** and its progeny, and were precisely correct.

[9] Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012).

[10] ***Brantley***, 152 So. 3d at 1114–15.

¶13.  So, even where the State or its subdivision establishes that it was involved in an overarching discretionary function, it nevertheless may lack immunity if the plaintiff can establish that, once the State exercised its discretion to engage in the discretionary function, it was subject to some duty imposed by law, and that the State's breach of that duty proximately caused the plaintiff's injuries and damages.[11]

¶14.  The Bureau's powers derive from Mississippi Code Section 17-3-29, which states in pertinent part:

> A convention bureau established hereunder shall have the authority to promote tourism and convention business. In this regard, the commission is empowered:
> . . .
>
> (4) To purchase, receive, lease, or otherwise acquire, own, hold, improve, use and otherwise deal in real or personal property or enter any interest therein wherever situated, subject to the prior approval of the appointing authorities;
> . . . .[12]

¶15.  In the broadest possible sense, the Bureau engages in an overarching discretionary function "to promote tourism and convention business."[13]  More important to this case, however, is that the statute empowers, but does not require, the Bureau "[t]o . . . own, hold, improve, use and otherwise deal in real or personal property . . . ."[14]

---

[11] *Id.* at 1115.

[12] Miss. Code Ann. § 17-3-29(4) (Rev. 2012).

[13] *Id.*

[14] *Id.*

¶16. By owning and using the Civic Center, the Bureau engaged in a function the statute authorized but did not require. So the Bureau's operation of the Civic Center was—as the circuit judge found—a discretionary function to which immunity attached. And, as the circuit judge found, Crider failed to point to any more narrow ministerial duty imposed by law.

**CONCLUSION**

¶17. Because the Bureau engaged in an overarching discretionary function—owning and using real property—to which immunity attached, and because the plaintiff failed to identify any more narrow ministerial function or duty imposed by law to maintain the Civic Center's grass, the learned trial judge properly granted summary judgment for the Bureau based on discretionary-function immunity.

¶18. **AFFIRMED.**

**KITCHENS, KING AND COLEMAN, JJ., CONCUR. MAXWELL, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY BEAM, J.; WALLER, C.J., AND RANDOLPH, P.J., JOIN IN PART. LAMAR, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. RANDOLPH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J.; MAXWELL AND BEAM, JJ., JOIN IN PART.**

**MAXWELL, JUSTICE, CONCURRING IN RESULT ONLY:**

¶19. It is said that "history is written by the victors." And today, the majority is trying to write the history of discretionary-function immunity by declaring "***Brantley*** is settled law."[15] ***Brantley***, however, is not "settled law." Rather, it is a recent departure from settled law, predicated solely on a false premise.

---

[15] ***Brantley v. City of Horn Lake***, 152 So. 3d 1106 (Miss. 2014).

7

### I. *Brantley* **was based on a false premise.**

¶20.	Less than two years ago, *Brantley* was decided by a narrow five-four victory. The majority in that case abandoned long-standing precedent, opting instead to create an entirely new test for determining discretionary-function immunity. *Brantley v. City of Horn Lake*, 152 So. 3d 1106, 1111-18 (Miss. 2014). But the concurrence in *Brantley* adhered to *stare decisis* and advocated for this Court's continued application of the United States Supreme Court's two-part public-policy-function test. *Id.* at 1118-23 (Waller, C.J., concurring in part and in result). Since then, the "*Brantley* test" has drawn continuous fire.[16]

¶21.	Most recently, in *Mississippi Transportation Commission v. Adams*, "I join[ed the] other voices from this court that disagree with the recent break from precedent." *Adams*, 2014-IA-01419-SCT, 2016 WL 3091194, at *9 (Miss. June 2, 2016) (on rehearing) (Maxwell, J., concurring in result only). "In my view, *Brantley* marked an unwise and unworkable departure from longstanding precedent." *Id.* And a prominent omission from the newly crafted *Brantley* test is its failure to consider whether the alleged activity involved

---

[16] Soon after *Brantley*, Chief Justice Waller, joined by three justices, echoed his disapproval of the new *Brantley* test when it was applied in *Boroujerdi*. *See Boroujerdi v. City of Starkville*, 158 So. 3d 1106, 1115-17 (Waller, C.J., dissenting). Specifically, Chief Justice Waller characterized the majority opinion as "depart[ing] from . . . precedent without regard for the fundamental legal doctrine of *stare decisis*." *Id.* at 1115. And when the *Brantley* test was applied in *City of Magee v. Jones*, 161 So. 3d 1047 (Miss. 2015), Justice Pierce criticized the majority for "fail[ing] to appreciate the purpose" of discretionary-function immunity is "to limit judicial 'second-guessing' of the state Legislature." *City of Magee*, 161 So. 3d at 1052 (Pierce, J., dissenting). More recently, in *Crum v. City of Corinth*, 183 So. 3d 847 (Miss. 2016), Presiding Justice Randolph "did not agree that *Brantley*'s test was correct when [this Court] adopted it." *Crum*, 183 So. 3d at 853 (Randolph, P.J., concurring in result only). Further "*Brantley* convolutes the process by requiring both the plaintiff and the defendant to look outside the alleged negligent act to establish immunity or lack thereof." *Id.* (citing *Jones*, 744 So. 2d at 260).

8

a policy decision. This undermines the very purpose of discretionary-function immunity—"to prevent judicial 'second-guessing' of legislative and administrative decisions *grounded in social, economic, and political policy* through the medium of an action in tort."[17]

¶22. Moreover, as Presiding Justice Randolph has pointed out, *Brantley* "places the success of a claim on the ability of the injured party's attorney to sift through myriad and sometimes arcane regulations—creating extra layers of proof, which may have little or no practical effect on the actual negligent act." *Crum v. City of Corinth*, 183 So. 3d 847, 854 (Miss. 2016) (Randolph, J., concurring in result only).

¶23. Despite these real concerns, this majority refuses to address any of Crider's arguments against the *Brantley* test. In her appeal, Crider argues this court's "abandonment of the public policy function test in *Brantley* was unwarranted and improper" for a variety of reasons. First, Crider claims the new test "ignores the U.S. Supreme Court's directive [in *United States v. Gaubert*] that only those functions which by nature are policy decisions, whether made at the operation or planning level, should be afforded immunity."[18] Second, she argues "the *Brantley* holding nullifies the very purpose of the discretionary function exemption which is to protect 'second guessing' of legislative and administrative decisions

---

[17] *United States v. Gaubert*, 499 U.S. 315, 323, 111 S. Ct. 1267, 1273-74, 113 L. Ed. 2d 335 (1991) (emphasis added) (citation omitted) (holding that, "when properly construed, the [discretionary-function] exception protects only governmental actions and decisions based on considerations of public policy").

[18] *See Gaubert*, 499 U.S. at 323, 111 S. Ct. at 1273-74, 113 L. Ed. 2d 335.

grounded in social, economic and political policy through the medium of an action in tort."[19]

And third, she echos the dissent in *Boroujerdi*, which argued the abolishment of the public-policy-function test violated *stare decisis*.[20]

¶24. Still, these truths aside, the majority dismisses Crider's argument because, in its view, "*Brantley* is settled law." But what the majority leaves out is the fact that *Brantley*—building on its predecessor *Little*[21]—itself unsettled fifteen years of precedent.

### A. Discretionary Function and the Public-Policy-Function Test

¶25. In 1999, recognizing that Section 11-46-9(1)(d) "appears to be patterned after 28 U.S.C. § 2680(a), the 'discretionary function' exception to the Federal Tort Claims Act," this Court adopted the United States Supreme Court's two-part public-policy-function test for determining discretionary-function immunity. *Jones v. Miss. Dep't of Transp.*, 744 So. 2d 256, 260 (Miss. 1999) (adopting the test set forth in *United States v. Gaubert*, 499 U.S. 315, 322, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991)).

¶26. Eight years after we adopted the United States Supreme Court's test in *Jones*, our Legislature reenacted Section 11-46-9(1)(d). *Boroujerdi*, 158 So. 3d at 1115 (Waller, C.J., dissenting). This unmodified reenactment signaled the Legislature's *approval* of our interpretation of the Mississippi Tort Claims Act as being patterned after the Federal Tort

---

[19] *Id.*

[20] *See Boroujerdi*, 158 So. 3d at 1115 (Waller, C.J., dissenting).

[21] *Little v. Miss. Dep't of Transp.*, 129 So. 3d 132 (Miss. 2013).

10

Claims Act.  *See McDaniel v. Cochran*, 158 So. 3d 992, 1000 (Miss. 2014).  And under the doctrine of *stare decisis*, it should have served to constrain this Court from further tinkering.  *See Caves v. Yarbrough*, 991 So. 2d 142, 154 (Miss. 2008)).

¶27.   Yet, two years ago, five members of this Court decided to reassess the comparison between Section 11-46-9(1)(d) and Section 2680(a).  Claiming to have found "a requirement not present in the Federal Tort Claims Act," the five-four majority in *Brantley* disavowed any similarity between Section 11-46-9(1)(d)  and Section 2680(a).  *Brantley*, 152 So. 2d at 1112.  The majority then abolished the federal two-part public-policy-function test and, in its place, crafted a completely new test.  *Id.* at 1112-1115.  The majority in this case continues to justify using the test it invented two years ago by perpetuating the fallacy that the Federal Tort Claims Act's "provisions materially differ from the Mississippi Tort Claims Act."  Maj. Op. ¶ 6.  But when properly construed, there is *no* material difference.

### B.     Comparing the State and Federal Statutes

¶28.   Section 11-46-9(1)(d) of the Mississippi Tort Claims Act provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]

Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2012).  Its federal counterpart, Section 2680(a), is extremely similar:

> The provisions of this chapter and section 1346(b) of this title shall not apply to – . . . [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal

agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

¶29. The **Brantley** majority makes much hay over the fact Section 2680 does not contain the phrase "*acting within the course and scope of their employment or duties.*" **Brantley**, 152 So. 3d at 1112 (emphasis added). It goes so far as to call it "a requirement not present in the Federal Tort Claims Act." ***Id.*** But this is factually and legally not true.

¶30. First, from a purely textual perspective, Section 2680 expressly incorporates Section 1346(b) by cross-reference, reinstating immunity for claims brought under that provision. 28 U.S.C. § 2680. And guess what types of claims Section 1346(b) covers? None other than "claims against the United States, for money damages . . . caused by the negligent or wrongful act or omission of any employee of the Government while *acting within the scope of his office or employment*[.]" 28 U.S.C. § 1346(b) (emphasis added).

¶31. So by incorporating Section 1346(b), Section 2680(a) attaches immunity to claims "caused by the negligent or wrongful act or omission of any employee of the Government while *acting within the scope of his office or employment*" when those claims are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 1346(b); 28 U.S.C. § 2680. *This is the exact same requirement found in Section 11-46-9(1)(d)*, which immunizes claims against "[a] governmental entity and its employees acting within the course and scope of their employment or duties" when that claim is "[b]ased upon the exercise or performance or the

12

failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]" Miss. Code Ann. § 11-46-9(1)(d).

¶32.    Second, common sense rejects the notion that, by using the phrase "acting within the course and scope of their employment or duties," our Legislature was adding a unique requirement to our Tort Claims Act and, thus, narrowing the scope of discretionary-function immunity.  The majority emphasizes that "our statute requires that acts occur in the course and scope of the actor's employment before discretionary-function immunity attaches." Well, of course it does.

¶33.    Section 11-46-9(1), like Section 2680, is about restoring sovereign immunity in limited circumstances.  And sovereign immunity requires a "sovereign"—i.e., a government actor.  By definition, to have a tort claim against a government actor, the actor *must* have been acting within the scope of his or her government employment or duties.  Otherwise, *it would not be a tort claim against a government actor*.  It would be a run-of-the-mill negligence claim against a person who, incidentally, happens to be employed by the government.  And the Mississippi Tort Claims Act, which abolished the common-law doctrine of sovereign immunity and replaced it with statutory immunity in certain circumstances, would not come into play.

¶34.    The Federal Tort Claims Act functions no differently.  Both acts cover tort claims against the government actors.  And both acts *necessarily* limit discretionary-function immunity to discretionary actions taken by governmental actors acting within the course and

13

scope of their employment or duties. If anything, Section 11-46-9(1)(d)'s phrase "acting within the course or scope of their employment or duties" makes explicit what is implicit in Section 2680—because a discretionary action taken by a government employee while *not* acting within the course and scope of his employment or duties is just a personal decision, not attributable to the government and not eligible for the protective cloak of sovereign immunity under *either* statutory scheme.

¶35. So in reality, there is *no difference* between the discretionary-function immunity provisions in Section 11-46-9(1)(d) and Section 2680(a)—let alone a material difference justifying abolishing the two-part public-policy-function test.

¶36. Here, when asked by Crider to return to the old test, the majority has chosen to disregard Crider's legitimate concerns and instead further perpetuate ***Brantley***'s false premise that our discretionary-function-immunity provision is somehow unique. In doing so, the majority misses a golden opportunity to right the ship and return to the longstanding two-part public-policy-function test. As I refuse to follow the majority down this errant path, I join the majority in result only.

## II. The Bureau is still immune.

¶37. That said, in Crider's case, such a return would not change the fact that the Bureau is immune.

¶38. As Presiding Justice Randolph points out, DeSoto County is not immune under the public-policy-function test. However, as part of our de novo review, we must affirm the grant of summary judgment "[i]f any ground raised and argued below will support the lower

court's decision." ***Wilbourn v. Stennett, Wilkinson & Ward***, 687 So. 2d 1205, 1214 (Miss. 1996) (citing ***Kirksey v. Dye***, 564 So. 2d 1333, 1336–37 (Miss. 1990)). And here, as the majority pointed out, discretionary-function immunity was not the only—nor even the first—ground for immunity the Bureau asserted.

¶39. The Bureau also argued to the trial court that it was immune under Section 11-46-9(1)(v).[22] And the undisputed facts in the record support this claim. So even if ***Brantley*** had not "greatly changed the manner in which this Court analyzes discretionary function immunity,"[23] Crider would still be facing the same result—the Visitors Bureau is entitled to immunity.

¶40. For these reasons I concur in the result only.

**BEAM, J., JOINS THIS OPINION. WALLER, C.J., AND RANDOLPH, P.J., JOIN THIS OPINION IN PART.**

**RANDOLPH, PRESIDING JUSTICE, DISSENTING:**

---

[22] Under Section 11-46-9(1)(v)—

(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . .

(v) Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care[.]

Miss. Code Ann. § 11-46-9(1)(v).

[23] ***Boroujerdi***, 158 So. 3d at 1111.

15

¶41. In 2014, by a five-four decision, this Court abrogated fifteen years of precedent regarding discretionary-function immunity under the Mississippi Tort Claims Act (MTCA),[24] a decision Chief Justice Waller later described as "a careless measure that will likely create chaos for the trial bench and bar, which have a right to expect consistency from this Court." *Boroujerdi v. City of Starkville*, 158 So. 3d 1106, 1116 (Miss. 2015) (Waller, C.J., dissenting).

¶42. While the majority describes *Brantley* as "settled law,"[25] *Brantley* is considered by many to be "settled" only within the confines of the walls surrounding the Mississippi Supreme Court. For the lawyers and judges working in the proverbial trenches, the law regarding discretionary immunity is barely short of chaotic. *Brantley* jettisoned what once was a workable solution. The Court has rejected multiple opportunities to return to the original analysis,[26] instead offering opinions bereft of standardization. Plaintiffs and defendants, along with the trial bench and bar, deserve predictability in the application of our law. Following *Brantley* and its progeny, only a few attorneys are capable of evaluating claims and/or defenses related to discretionary immunity. *Brantley* and its progeny leave our trial judges to randomly guess how their discretionary-immunity judgments will be evaluated on appeal. The sovereign State and its subdivisions are left, in many situations, unable to

---

[24] *See **Brantley v. City of Horn Lake***, 152 So. 3d 1106 (Miss. 2014).

[25] *See* Maj. Op. at ¶ 10.

[26] *See **Crum v. City of Corinth***, 183 So. 3d 847, 853-55 (Miss. 2016) (Randolph, P.J., concurring in result only); *Boroujerdi*, 158 So. 3d at 1115-17 (Waller, C.J., dissenting); *Brantley*, 152 So. 3d at 1118-23 (Waller, C.J., concurring in part and in result).

16

know, before engaging in certain conduct, whether their conduct is protected by immunity. Injured parties are left with uncertainty as to whether they may claim money damages, or whether the governmental entity is exempt from liability. *See* Miss. Code Ann. §§ 11-46-5(1), 11-46-9(1)(d) (Rev. 2012). These developments dictate a return to the public-policy function test[27] that preceded **Brantley**. The very reason we apply *stare decisis* is "so that trial courts can make correct decisions and lawyers can properly advise their clients." **United Servs. Auto Ass'n v. Stewart**, 919 So. 2d 24, 30 (Miss. 2005). And when attorneys are left unable to advise their clients on the applicability of discretionary-function immunity in the wake of **Brantley**, the whole argument for upholding "the new test" based on *stare decisis* is undermined.

¶43.    It was the majority in **Brantley** that disregarded *stare decisis*. *See* **Boroujerdi**, 158 So. 3d at 1115 (Waller, C.J., dissenting). The proponents of the **Brantley** test have yet to justify why such a break with precedent was warranted or necessary, notwithstanding Chief Justice Waller's arguments to the contrary.

> [E]ven where this Court determines a prior interpretation of a statute to be incorrect, "we will nevertheless continue to apply the previous interpretation, pursuant to the doctrine of *stare decisis*, upon finding the Legislature amended or reenacted the statute without correcting the prior interpretation." **Caves v. Yarbrough**, 991 So. 2d 142, 154 (Miss. 2008) (holding that *stare decisis* required adherence to a judicially created discovery rule under the MTCA, where the Legislature had reenacted the statute in question without countermanding this Court's prior interpretations).

---

[27]For determining the application of discretionary-function immunity, the United States Supreme Court formulated the "public-policy function test." *See* **United States v. Gaubert**, 499 U.S. 315, 322-23, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). This Court adopted the same public-policy function test in **Jones v. Miss. Dep. of Transp.**, 744 So. 2d 256 (Miss. 1999).

A thorough review of the majority opinion reveals no mention of the Legislature's reenactment of Section 11–46–9 eight years after this Court's holding in *Jones*, which serves as evidence of the Legislature's approval and incorporation of the public-policy function test into the statute. *See Caves*, 991 So. 2d at 154. The majority does not explain how our established rule for analyzing discretionary-function immunity is erroneous as an initial matter. And even assuming *arguendo* that our prior interpretation of the law has been incorrect, the majority fails to point out how our continued adherence to precedent is in any way impractical, pernicious, mischievous in effect, or detrimental to the public. On the contrary, I view our adoption of the public-policy function test as a well-reasoned decision that should not be abandoned simply because some members of this Court do not agree on its intricacies.

*Boroujerdi*, 158 So. 3d at 1115-16 (Waller, C.J., dissenting).

¶44.    In applying the *Brantley* test, the majority looks to the "broadest function involved in order to make a baseline determination" and then examines "any narrower duty" to determine whether a governmental entity enjoys discretionary-function immunity. *See* Maj. Op. at ¶ 12 (citing *Brantley*, 152 So. 3d at 1114-15). But the statute does not speak to "broad functions," "baseline determinations," or "narrow duties." *See* Miss. Code Ann. § 11-46-9(1)(d) (granting immunity for any claim "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused"). *Brantley* and its progeny grafted those terms into the statute—without definition or guidance in their application. The result is an amalgamation of various interpretations, from a multitude of justices on this Court and judges on the Court of Appeals, lacking a modicum of consistency and predictability.

18

¶45. Discretionary immunity is one of the most misunderstood and oft-criticized areas of law in our state. The need to return to the public-policy function test is self-evident. We should accept Crider's invitation to do so. Employing the public-policy function test, we determine (1) whether the activity involved an element of choice or judgment, and if so, (2) whether that choice or judgment involved social, economic, or political policy." *Crum*, 183 So. 3d at 854 ( Randolph, P.J., concurring in result only) (citing *Dancy v. E. Miss. State Hosp.*, 944 So. 2d 10, 16 (Miss. 2006)).

¶46. Crider alleges the Bureau failed to properly inspect and maintain a grassy area on its grounds, and as a result, she was injured when she stepped into a hole obscured by overgrowth, fell, and broke her ankle. I still "fail to see how mowing grass requires any governmental judgment or lends itself to the discretion of an employee." *Id.* at 853. While the decision whether to construct and operate a visitors bureau may be discretionary,

> once the [county] exercised that discretionary authority, it became incumbent on its employees to exercise concomitant duties in operation and maintenance—duties which are neither exclusively discretionary nor ministerial. I maintain that "there is a vast difference between the statutorily supported discretion to [construct, operate, and maintain a building] and the practical, mundane, day-to-day operation and maintenance actions which arise after the exercise of such discretion, to which the statute does not speak."

*Id.* at 854 (citing *Fortenberry v. City of Jackson*, 71 So. 3d 1196, 1204–05 (Miss. 2011) (Randolph, J., dissenting)).

¶47. Moreover, I fail to see how the lawn-mower operator's choice involved social, economic, or political policy. His job was to cut the grass and inspect the grounds. Operating a lawn mower entails no budgetary considerations or resource allocations. Deciding to steer

19

left or right, how high to cut, or what pattern to cut implicates no policy considerations. Crider alleges a simple act of negligence which is not protected by discretionary-function immunity.

¶48.    In sum, I would revive the public-policy function test. Applying the public-policy function test, the Bureau's alleged failure to inspect and maintain its grounds did not implicate public-policy considerations. I would find the circuit court erred in granting summary judgment in favor of the Bureau based on discretionary-function immunity.

**WALLER, C.J., JOINS THIS OPINION.  MAXWELL AND BEAM, JJ., JOIN THIS OPINION IN PART.**