LAMAR, Justice,
for the Court:
¶ 1. This is an interlocutory appeal. The Mississippi Transportation Commission (“MTC”) and the Mississippi Department of Transportation (“MDOT”) (collectively, the “defendants”) filed a motion for summary judgment in the Jackson County Circuit Court and argued that they were immune from liability under the Mississippi Tort Claims Act (“MTCA”). The trial judge denied their motion because the plaintiff had alleged — and provided evidence — that they had violated specific regulations.[1] The trial judge rejected the defendants’ argument that, notwithstanding-certain narrower regulations requiring specific actions, they were immune from liability because the broader function of traffic-control-device placement is discretionary. We affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Christopher Adams died from injuries he sustained when his motorcycle wrecked on Interstate 10 in Jackson County. After traveling north on Interstate 110 in Harrison County, Adams merged onto an eastbound lane of I — 10, where he entered a construction zone. According -to the complaint, Adams inadvertently drove into a closed lane and then, when he tried to navigate back into an open lane, his motorcycle hit an uneven surface between lanes and “rotated.” Adams was thrown from his motorcycle and into traffic, where two other vehicles hit him, causing injuries from which he later died.
¶ 3. Adams’s spouse, Dominique, filed suit against the defendants[2] and alleged eight causes of action:
1., Failing to comply with the Mississippi Standard Specifications for Road and Bridge Construction;
*409 2. Failing to comply with the Manual on Uniform Traffic Control Devices;
3. Failing to place proper warnings in advance of the lane closures; :
4. Failing to place proper warnings in • advance of the uneven pavement;
5. Failing to act with ordinary and reasonable care under the circumstances of the subject construction zone;
6. Creating and allowing a known and unreasonably dangerous and hazardous condition to exist in the subject construction zone in reckless'disregard for the safety of citizens traveling through the subject construction zone;
7. Failing to erect and/or maintain warning signs to alert travelers along the subject construction zone to the fact that dangerous conditions existed as a result of said construction being performed; and
8. Further negligent acts or omissions to be shown a[t] trial.
• ¶ 4. The defendants answered Adams’s complaint and denied all claims. Soon thereafter, the defendants filed two motions; a motion to dismiss or for summary judgment based on MTCA immunity and a motion asking the trial judge to hold their summary-judgment motion in abeyance and to enter a scheduling order for discovery on its immunity defenses. The trial judge ultimately entered an agreed scheduling order setting various deadlines for discovery on the defendants’ immunity-related defenses.

Moody’s Affidavit

¶ 5. During the discovery period, the defendants designated two experts, Dean Moody and Gary McCollom, both of whom were also MDOT employees. Moody, the project engineer for the 1-10 expansion where the accident occurred, submitted an affidavit. He stated that “MDOT employees monitored compliance with the Temporary Traffic Control Plan routinely and frequently throughout the duration of the Construction project.”[3] Moody also stated that “Mallette Brothers was in compliance with, the Construction Plans and the Temporary Traffic Control Plan during the entire course of. the Construction Project.” Moody’s affidavit continued:
The MDOT had and has no knowledge of any noncompliance by Mallette Brothers relating to the Temporary Traffic Control Plan for the Construction Project and site. During Phase 4 of the Project and before the accident which is the subject of the claims against the MDOT, I examined the traffic control devices set out by Mallette Brothers and found that the traffic control devices complied with the Temporary Traffic Control Plan. . The Temporary Traffic Control Plan for Phase 4 of the Project also did not require additional pavement markings other than those specified in the Temporary Traffic Control Plan.

Tekell’s Affidavits

¶ 6. Adams designated V.O. “Dean” Te-kell Jr. as an expert. Tekell, submitted two affidavits. In the first affidavit,' he opined — based on his review of the “pleadings, documents and photographs of the parties” — that the defendants “ha[d] a duty to maintain, repair and inspect state-maintained highways,” and that the defendants “breached this duty by failing to regularly inspect the area where the subject incident occurred.”
¶ 7. According to Tekell, the defendants “knew or should have known of the' absence of a solid white traffic stripe in the area of the subject incident and that the *410 plastic drums were placed too far from the edge of the travel lane.” Tekell also stated that “[b]y failing to place a solid white traffic stripe and by failing to place the drums in conformance with their details, they breached this duty.” Tekell stated further that the defendants had a duty to designate a responsible person to monitor Mallette Brothers’- compliance with the project’s Construction Plan and Traffic Control Plan pursuant to Section 618.01.2 of the Red Book, and that they had failed to monitor for at least five days prior to the incident. According to Tekell, the defendants “knew or should have known of Mallette Brothers’ non-compliance with the Traffic Control Plan,” and they “failed to require Mallette Brothers to place a solid white traffic strip in the area of the subject incident and failed to require the placement of drums in conformance with the traffic control detail.”
¶8. Tekell submitted a supplemental affidavit and opined that the defendants also had violated Red Book Section 618.03.3 (mandating that lane lines and edge lines that have been covered or removed during the day’s operations be replaced before work is discontinued for the day or soon thereafter):
Based on the deposition testimony of Frank Mallette ... and the photographs produced by the parties, Mallette Brothers did not place any striping or edge lines in the area where the subject incident occurred.
Tekell further opined, “[i]n fact the contractor and MDOT permitted an edge line from a prior phase to remain in conflict with their barrels,” which is a violation of Red Book Section 619.03.2 and a breach of their duties.
Motion Hearing
¶ 9. After the immunity-defense discovery period, the defendants filed their supplemental motion to dismiss or for summary judgment. At the hearing on the motion, the defendants argued primarily that they enjoyed discretionary-function immunity for anything related to traffic-control devices. They argued further that this discretion conferred immunity even if there were other specific statutes and regulations that addressed traffic-control-device placement. Adams countered that, while Mississippi Code Section 63-3-303 did indeed give the defendants discretion regarding the overall function of placing and maintaining traffic-control devices, certain other statutes and Red Book sections rendered some narrower duties associated with traffic-control devices ministerial. See Miss.Code Ann. § 63-3-303 (Rev.2013).
¶ 10. After a recess, the trial judge denied the defendants’ motion from the bench:
MDOT is not a constitutional creature, but is a creature of the Legislature. By empowering it to come into existence, it allowed it to promulgate and use certain standards, which ... have been in place for decades, perhaps at the inception of MDOT.... And in that case, those standards take on an entirely different role, and that role is statutory, it’s legal, it is what binds MDOT to do its job.
This Court granted the defendants’ petition for interlocutory appeal, and they now raise several issues on appeal, which we restate as:
1. Adams’s claims that MDOT failed to use proper traffic-control devices are barred by the MTCA, specifically Sections 11 — 46—9(l)(d) and ll-46-9(l)(p):
2. Mississippi Code Sections 65-1-65 and 65-1-67 “do not apply” to Adams’s claims:
3. The trial judge erred when he ruled “essentially” that Red Book *411 provisions “supercede” Mississippi Code Section 63-3-303:
4. Adams failed to demonstrate a causal connection between the defendants’ alleged negligence and the motorcycle accident.
We have consolidated and rearranged some of the issues in our discussion for clarity.
STANDARD OF REVIEW
¶ 11. Trial courts should grant motions for summary judgment “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show- that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Miss. R. Civ. P. 56(c). Immunity under the MTCA “is an entitlement not to stand trial rather than a mere defense to liability and, therefore, should be resolved at the earliest possible stage of litigation.” Brantley v. City of Horn Lake, 152 So.3d 1106, 1109 (Miss.2014) (quoting Mitchell v. City of Greenville, 846 So.2d 1028, 1029 (Miss.2003)). This Court reviews de novo the application of the MTCA and grants or denials of summary-judgment motions. City of Magee v. Jones, 161 So.3d 1047, 1049 (Miss.2015) (citing Lee v. Mem’l Hosp. at Gulfport, 999 So.2d 1263, 1266 (Miss.2008); Johnson v. Pace, 122 So.3d 66, 68 (Miss.2013)).
-ANALYSIS
¶ 12. The crux of this appeal is whether the defendants” placement and maintenance of traffic-control devices was discretionary, so as to afford them immunity from Adams’s suit. The defendants argue that, by denying summary judgment, the trial court in essence decided that the specific regulations cited by Adams “superseded” the discretion the Legislature had afforded them in Section 63-3-303. Adams posits that this Court has addressed this scenario in Brantley and in several subsequént opinions, holding that “certain narrower functions and duties” involved with a discretionary function “may be rendered ministerial through .applicable-statutes, regulations, and/or ordinances.” Boroujerdi v. City of Starkville, 158. So.3d 1106, 1108 (Miss.2015). We agree with Adams for the reasons discussed below.
1. The defendants do not enjoy discretionary-function immunity because Adams has produced evidence that they breached ministerial duties.
¶ 13. Mississippi Code Section 11-46-9(l)(d) provides:
A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]
Miss.Code Ann. § 11 — 46—9(l)(d) (Rev. 2012). There is no dispute that the defendants are governmental entities and that the provisions of the MTCA — including its immunity provisions — control here. Again, the defendants argue that they have discretionary-function immunity, as provided in Section 11 — 46—9(l)(d), “because all of Adams’s claims [are] predicated on the use and placement of traffic control devices.” The defendants rely on Section 63-3-303, which provides, in pertinent part:
The commissioner of public safety and the state highway commission shall place and maintain such traffic-control *412 devices conforming to its manual and specifications, upon all state and county highways as it shall deem necessary to indicate and to carry out the provision of this chapter or to regulate, warn, or guide traffic.
Miss.Code Ann. § 63-3-303.[4] Based on this language, the defendants argue that “placement and maintenance of traffic control devices are discretionary functions and duties” that the Legislature has excepted from the defendants’s “ministerial duty to equip the state’s highways with traffic control devices_”
¶ 14. Adams does not disagree with this assertion but argues that within the overarching discretionary function prescribed by Section 63-3-303 exist certain narrower duties made ministerial by specific regulations and statutes. In Brantley, this Court explained that
while one statute may render a broad function ministerial, another statute or regulation may render a duty involved with that function discretionary, thus allowing the performance of such a duty to enjoy immunity. And clearly, the converse must be true, such that narrower duties encompassed in a broad discretionary junction may be rendered ministerial through statute or regulation.
Brantley, 162 So.3d at 1113 (emphasis added). And in Boroujerdi, a case involving a sewage backup in a home, this Court said “while the overall function of maintaining a sewage system may be discretionary, certain narrower functions and duties involved with [a discretionary function] may be rendered ministerial through applicable statutes, regulations, and/or ordinances.” Boroujerdi, 158 So.3d at 1108.

Red Book Sections

¶ 15. The regulations at the core of Adams’s claims are various sections of the Mississippi Standard Specifications for Road and Bridge Construction (the “Red Book”). The Red Book covers all areas of road construction from the bid process to traffic control in construction and reconstruction zones.[5] MTC has adopted it and ordered that it govern “all road and bridge construction except as may be designated otherwise in the ■ contract documents for work already advertised or under construction.” Here, MTC expressly incorporated the Red Book into the proposal and contract documents;
¶ 16. As detailed above, Adams produced evidence that the défendants had violated ministerial duties established by the Red Book. First, Adams presented evidence that the defendants had violated a portion of Section 618.03.3, which provides:
All centerline, lane lines, edge lines and no-passing stripes that have been covered or removed during the day’s operations shall be replaced with temporary stripe before work is discontinued for the, day or as soon as weather conditions will permit..,.
(Emphasis added.) Tekell stated in his supplemental affidavit that “Mallette Brothers did not place any striping or edge lines in the area where the subject incident occurred.” And according to the complaint, the lane in which Adams was traveling started to taper to the left, but there was no edge marking showing the lane movement. As a result, he found himself traveling in a lane that was closed to traffic. And when he attempted to *413 change lanes -into the open lane, hé hit the uneven longitudinal' edge and was thrown from his motorcycle. ...
¶ 17. Adams also produced evidence that the defendants had violated a portion of Section 619.03.2, which mandates that “[existing pavement markings -conflicting with temporary markings shall be removed.” Specifically, Adams alleged — and the defendants do not dispute — that the existing . pavement marking, “continues through the shoulder and goes off into, the woods.” And Tekell stated in his supplemental affidavit that the defendants “permitted an edge line from a prior phase to remain in conflict with their barrels.”
¶ 18. Adams further produced evidence that the defendants had violated a portion of Section 618.01.2, which mandates that they shall designate a “responsible person” to monitor the contractor’s compliance with the Plan. Tekell stated in his initial affidavit that the defendants had failed to monitor Mallette Brothers’ compliance with the Plan for at least five days prior to the incident, and that they “knew or should have known” of Mallette Brothers’ “non-compliance.”
¶ 19. Based on our holdings in Brantley and Boroujerdi and in light of the evidence detailed above, we find that the trial judge did not err when he found that the defendants were not entitled to discretionary-function immunity.[6] Stated differently, we find that the function here presents “the converse” principle that Brantley discussed: placement and maintenance of traffic-control devices is discretionary, unless narrower duties encompássed in that function — such as placing and maintaining edge lines — have been “rendered ministerial through statute or regulation.” Id, at 1113.
¶ 20. 'The defendants argue strenuously that this Courfls decision in Alabama Great Southern Railroad v. Jobes “leaves no doubt that claims advanced on the use and , placement of traffic-control devices are cloaked with immunity.” There, .this Court found that “[Section 63-3-303] allows MDOT, in its discretion, to determine the appropriate type,.number, and location of traffic-control devices,- making it immune from liability for-this claim under Section ll-46-9(l)(d).” Alabama Great Southern R.R. v. Jobes, 156 So.3d 871, 882 (Miss.2015). , But we made that finding only after noting specifically that Jobes had failed to allege any narrower duty, or to present any evidence to support her allegations;
While Jobes does generally allude to some of MDOT’s standard operating procedures related to potholes, warning sign placement, and pavement edging in her Response to MDOT’s Motion, she has presented absolutely no evidence regarding MDOT’s exact duties, or whether those duties were breached.
Id. at 880. But as shown-above, Adams has presented evidence here through expert affidavits. ' So we reject the defendants’ argument that Jobes controls.
¶ 21. In sum, we affirm the trial judge’s denial of summary, judgment because Adams produced evidence that the defendants had breached certain specific ministerial duties imposed by their own duly adopted regulations. We reject the defendants’ argument that, because there is a statute rendering the overarching function at issue here discretionary, no regulation can render an act associated with that function ministerial.

*414
Mississippi Code Section 65-1-67

¶22. The defendant's appear also to argue that they enjoy discretionary-function immunity from Adams’s claims that they violated Mississippi Code Section 65-1-67. They couch their ■ argument in different terms, asserting that the section “does not apply,” but the crux of their argument is, again, their exercise of discretion. The first paragraph of Section 65-1-67 requires MTC
to have the State Highway Department trim with edge lines, of a color and in a manner which conforms with uniform national standards relating thereto which have been adopted by the Federal Highway Administration, the edges of all state-designated hard-surfaced highways which are constructed of asphaltic material, in the interest of public safety on said highways.
Miss.Code Ann. § 65-1-67 (Rev.2012). The second paragraph carves out an exception for roads under construction:
Except as necessary to accommodate reconstruction, no road or highway shall be opened for public use until the department has complied with the provisions of this section; however, the Director of the State Highway Department may permit segments of roads under contract for maintenance, construction or reconstruction to be open for public use when temporary center line markings are installed.
Id. Photographs produced in discovery show — and the parties do' not dispute— that on the night of the accident there was no white edge line where Adams wrecked, but there was a temporary center line. The defendants argue that the statute affords them the discretion to open an under-construction road as long as there is a temporary center-line marking, and that “MDOT’s duty to edge the state’s roads and highways does not apply where the road is under ‘reconstruction.’ ”
¶23. Adams counters that, while some discretion may exist, MTC has decided— by mandating that' the Red Book govern all construction contracts and by expressly incorporating it into the Traffic Control Plan here — to abide by the prescriptions in that manual. And since one of the sections — namely 618.03.3, discussed above— provides that all “edge lines ... that have been covered or removed during the day’s operations shall be replaced with temporary stripe before work is discontinued for the day ...,” the defendants cannot now assert the discretion allowed by Section 65-1-67.
¶ 24. We agree with Adams. The plain language of the statute does not support the interpretation that the defendants can ignore the express requirements of the Red Book, and, by extension, the Traffic Control Plan. We are not persuaded by their argument that the second paragraph of Section 65-1-67 allows MTC to not comply with the regulations it adopted and incorporated into the Traffic Control Plan here.
2. Mississippi Code Section 65-1-65 imposes a ministerial duty.
¶ 25. Mississippi Code Section 65-1-65 requires MTC to, among other things, have MDOT “organize an adequate and continuous patrol for the maintenance, repair, and inspection of all of the state-maintained state highway system, so that said highways may be kept under proper maintenance and repair at all times.” Miss.Code Ann. § 65-1-65. This Court held in Little v. Mississippi Department of Transportation, 129 So.3d 132, 138 (Miss.2013), that “[bjecause Section 65-1-65 requires the Department to maintain and repair state highways, that duty — and all acts in furtherance of that duty — are min *415 isterial .unless, as in Montgomery, another statute makes a particular act discretionary.” Little, 129 So.3d at 138.[7]
¶ 26. Adams argues that the defendants breached the ministerial duties imposed by Section 65-1-65. But the defendants argue that Section 65-1-65 does not impose a ministerial duty here because it applies only to roads “which have been or which may be hereafter taken over by the State Highway Department for maintenance .... ” The defendants argue that, because this portion of 1-10 was under reconstruction, it was not “taken over” at the time of the accident, and thus Section 65-1-65 does not apply. The defendants’ only authority for this proposition is Montgomery, in which this Court noted that
the decision to build a road and the initial placement of traffic control devices is of the planning nature, involving public policy considerations. Bailey Drainage Dist. v. Stark, 526 So.2d 678, 681 n. 1 (Fla.1988). However, once the road is built and the responsible entity becomes aware of a dangerous condition in connection with the road, the duty becomes one of maintenance.
Montgomery, 80 So.3d at 798 (quoting Jones v. Miss. Dep’t of Transp., 744 So.2d 256, 264 (Miss.1999)). In other words, the defendants ask this Court to find that this section of 1-10 was not “built” because they were adding two lanes.
¶ 27. But Mississippi Code Section 65-3-3 provides that certain roadways in Mississippi, including I — 10, “are designated as state highways and shall be under the jurisdiction of the Mississippi Transportation Commission for construction and maintenance.'...” Miss.Code Ann. § 65-3-3. The defendants have cited no authority for the fiction they advocate here: that while Section 65-1-65 applied to the part of 1-10 on the completed side of the orange barrels, it did not apply on the construction side, because that was merely a road that had yet to be “built.” We reject this argument and find that Section 65-1-65 applied to the portion of the highway that was under construction and did, consistent with Little, impose a ministerial duty of maintenance and repair upon the defendants.
3. The defendants are not immune under Mississippi Code Section 11 — 46—9(l)(p) because Adams does not claim MTC’s plans were deficient; Adams claims MTC’s plans were not followed.[8]
¶28. The defendants also argue that they are immune under Mississippi Code Section ll-46-9(l)(p) because all of Adams’s claims about traffic-control devices are actually claims that MTC’s plans were deficient.[9] According to the defendants, “Adams’[s] claims that this or that *416 traffic control device or sign should have been placed' here or there spring from MDOT’s plans and designs But the record belies this claim: Adams specifically argues that the construction plans incorporated the Red Book requirements and that the defendants and Mallette Brothers then- violated those requirements. We find nothing in Adams’s complaintj pleadings, or arguments on appeal that can fairly be construed as a- claim that,' MTC’s plans were deficient.
4. The defendants’ causation argument is not properly before this Court.
¶29. The defendants argue, for the first time on appeal, that “[e]ven if some of Adams’s- claims point to functions and duties that are deemed ministerial, which is denied, Adams failed to bring forth summary-judgment type evidence to establish her negligence claim.” But this issue is not properly before this Court. The record is clear that, at every point prior, to this appeal, the only litigated issue was if the MTCA barred Adams’s claims.
If 30. Most importantly, the trial court’s order and the hearing transcript show that the trial judge never addressed this issue and was never asked to do so. “One of the most fundamental and long established rules 'of law in Mississippi is that the Mississippi • Supreme Court will not review matters on appeal that were not raised at the trial court level.” Shaw v. Shaw, 603 So.2d 287, 292 (Miss.1992) (quoting Estate of Myers v. Myers, 498 So.2d 376, 378 (Miss.1986)) (internal quotation marks omitted). At the defendants’ behest, the trial-court proceedings were limited to their immunity defense, and we decline to address any new matters on appeal.
CONCLUSION
¶ 31: For the reasons discussed above, the defendants’ assignments of error are without merit, and the trial judge did not err when he denied their motion for summary judgment. We therefore affirm the judgment of the Jackson County Circuit Court and remand the case to the trial court for further proceedings consistent with this opinion.
¶ 32. AFFIRMED AND REMANDED.
DICKINSON, P.J., KITCHENS, KING, COLEMAN AND BEAM, JJ., , CONCUR. MAXWELL, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY ■ WALLER, C.J., AND RANDOLPH, P.J. RANDOLPH, P.J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.

. The trial judge made this ruling without the benefit of this Court’s decision in Brantley v. City of Horn Lake, 152 So.3d 1106 (Miss.2014), But as will be shown below, the trial judge properly applied Brantley.

. Adams also named as a defendant the primary contractor for the road construction project, Mallette Brothers Construction Company, Inc. But it is not a party to this appeal.

, We explain the various rules, and regulations cited by the experts later in this opinion.

. The length of I — 10 located in Mississippi is a designated state highway. Miss.Code Ann. § 65-3-3 (Rev.2013).

. http://mdot.ms.gov/documents/ipa/ MS% 202004% 20Standard% 20Specifications.pdf (last visited May 31,2016).

. We note that the defendants failed to analyze or eVen cite either of these opinions in their initial brief-before this Court.

. The "other statute” present in Montgomery was Section 63-3-305, which is nearly identical to Section 63-3-303 except that it applies to "local authorities.” Mississippi Transp. Comm’n v. Montgomery, 80 So.3d 789, 796 (Miss.2012); Miss.Code Ann. § 63-3-305.

. The defendants mentioned several other MTCA subsections at the trial-court level, but since they failed to pursue those on appeal, we consider them abandoned. Bannister v. State, 731 So.2d 583, 588 (Miss.1999). Therefore, only subsections (d) and (p) are before the Court in this appeal.

.(1) A governmental entity and its employees acting within, the course and scope of their employment or duties shall not be liable for any claim:
[[Image here]]
(p) Arising out of a plan or design for construction or improvements to public property, including, but not limited to, public buildings, highways, roads, streets....
Miss Code Ann. § 11 — 46—9(l)(p) (Rev,2012).