COLEMAN, JUSTICE, CONCURRING:
 

 ¶ 39. I concur with the majority and write separately to explain further my decision to do so.
 

 ¶ 40. In the nascent years of Mississippi's Tort Claims Act, the Court interpreted the Section 11-9-46(1)(d) phrase "discretionary function or duty" to protect "those governmental decisions in which, to be effective, the decision-maker must look to considerations of public policy and not merely to established professional standards or to standards of professional reasonableness."
 
 Robinson v. Indianola Mun. Separate Sch. Dist.
 
 ,
 
 467 So.2d 911
 
 , 915 (Miss. 1985). Indeed, the
 
 Robinson
 
 Court noted that the "principle of immunity from suit for governmental bodies vested with discretionary authority was carried forward" by the Legislature when it adopted the Mississippi Tort Claims Act.
 
 Robinson
 
 ,
 
 467 So.2d at 915
 
 . I concurred with the majority in
 
 Brantley v. City of Horn Lake
 
 ,
 
 152 So.3d 1106
 
 (Miss. 2014), but there we failed to consider properly the weight of the above-identified precedent that squarely interpreted Mississippi's discretionary-immunity provision an a manner consistent with our later adoption of the public-function test. In
 
 Brantley
 
 we failed to consider the binding precedent of
 
 Robinson
 
 and other early cases and failed to consider whether departing from them was justified despite the stabilizing influence of the principle of
 
 stare decisis
 
 .
 

 ¶ 41. Further, I agree with the majority that the
 
 Brantley
 
 Court wrongly distinguished the Federal Tort Claims Act based on the perceived absence in the federal law of the "course and scope" limitation found in the Mississippi Tort Claims Act.
 
 Brantley
 
 ,
 
 152 So.3d at 1112
 
 (¶ 19). As the majority points out, the federal version does indeed contain a course and scope limitation.
 

 ¶ 42. Accordingly, I concur with the majority opinion and its holding that overrules
 
 Brantley
 
 .
 

 RANDOLPH, P.J., JOINS THIS OPINION IN PART.
 

 KITCHENS, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:
 

 ¶ 43. Mississippi Code Section 11-46-9(1)(d) provides that:
 

 A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim ... [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the governmental entity or employee thereof, whether or not that discretion be abused.
 

 Miss. Code Ann. § 11-46-9
 
 (1)(d) (Rev. 2012). I agree with the majority that the Lincoln County Board of Supervisors and the City of Brookhaven are not immune and that the Circuit Court of Lincoln County erroneously granted the motions to dismiss. But because the majority returns this Court to the public policy function test, which we overruled approximately three years and five months ago in
 
 Brantley v. City of Horn Lake
 
 ,
 
 152 So.3d 1106
 
 (Miss. 2014), I respectfully concur in result only.
 

 ¶ 44. In
 
 Brantley
 
 ,
 
 152 So.3d at 1116
 
 , we held that Section 11-46-9(1)(d) required us to "abandon the public-policy function test, because its language does not limit the immunity enjoyed in the exercise of a discretionary function to discretion involving policy judgments. Instead, the statute requires only that the discretion be exercised in the course and scope of the entity or employee's employment or duty." Today's majority exhumes the public policy function test because federal courts, including the United States Supreme Court, have construed the Federal Tort Claims Act, Title 28, Section 2680(a) of the United States Code, to include "actions for personal injuries 'caused by the negligent or wrongful act or omission
 
 of any employee of the Government
 
 while acting within the scope of his office or employment ...."
 
 Sheridan v. United States
 
 ,
 
 487 U.S. 392
 
 , 400,
 
 108 S.Ct. 2449
 
 ,
 
 101 L.Ed.2d 352
 
 (1988) (quoting
 
 Panella v. United States
 
 ,
 
 216 F.2d 622
 
 , 623 (2d Cir. 1954) ) (emphasis in original).
 
 [21]
 

 ¶ 45. But, irrespective of the manner in which the federal courts see fit to interpret federal statutes, Section 2680(a), which the majority says is no different from Section 11-46-9(1)(d), reads as follows:
 

 Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
 

 28 U.S.C. § 2680
 
 (a) (Rev. 2012). Notably absent is the predicate requirement of Section 11-46-9(1)(d) that the governmental entity and its employees enjoy discretionary-function immunity only when the governmental entity and its employees are "acting within the course and scope of their employment or duties ...."
 
 See
 

 Brantley
 
 ,
 
 152 So.3d at 1112
 
 ("the Mississippi Tort Claims Act contains a requirement not present in the Federal Tort Claims Act ...."). That is not to say that "federal employees can claim sovereign immunity for actions taken outside the course and scope of their employment." Maj. Op. ¶ 26. The majority correctly relates that other sections of the United States Code restrict governmental immunity to the employees acting within the scope of their employment. The course and scope of the employment requirement is absent textually from Section 2680(a), itself.
 

 ¶ 46. Even assuming, for the sake of argument, that the federal and Mississippi statutes are identical textually, the
 
 Brantley
 
 Court said that the judicial adoption of the public policy function test "imposed a restriction on immunity neither derived from nor contemplated by Mississippi's statutory language: that the activity in question 'involve[ ] social, economic, or political
 policy considerations.' "
 
 Brantley
 
 ,
 
 152 So.3d at 1112
 
 (quoting
 
 Miss. Transp. Comm'n v. Montgomery
 
 ,
 
 80 So.3d 789
 
 , 795 (Miss. 2012) (citing
 
 Jones v. Miss. Dep't of Transp.
 
 ,
 
 744 So.2d 256
 
 , 260 (Miss. 1999),
 
 abrogation recognized by
 

 Doe v. Rankin Cty. Sch. Dist.
 
 ,
 
 189 So.3d 616
 
 (Miss. 2015) ).
 

 ¶ 47. The United States Supreme Court had the benefit of legislative history when crafting the public policy function test: "[t]he legislative materials of the 77th Congress illustrate most clearly Congress' purpose in fashioning the discretionary function exception."
 
 United States v. Varig Airlines
 
 ,
 
 467 U.S. 797
 
 , 809,
 
 104 S.Ct. 2755
 
 ,
 
 81 L.Ed.2d 660
 
 (1984). No such materials exist for this Court's consideration of legislative intent. By contrast, we have held that "[t]o determine legislative intent, the Court looks first to the language of the statute."
 
 Lawson v. Honeywell Int'l, Inc.
 
 ,
 
 75 So.3d 1024
 
 , 1027 (Miss. 2011) (citing
 
 Pinkton v. State
 
 ,
 
 481 So.2d 306
 
 , 309 (Miss. 1985) ).
 

 ¶ 48. The United States Supreme Court explained also that a "Government spokesman appearing before the House Committee on the Judiciary" said that Section 2680(a) was " 'designed to preclude application of the act to a claim based upon an alleged abuse of discretionary authority by a regulatory or licensing agency-for example, the Federal Trade Commission, the Securities and Exchange Commission, the Foreign Funds Control Office, or Office of the Treasury, or others.' "
 
 Varig Airlines
 
 ,
 
 467 U.S. at 809
 
 ,
 
 104 S.Ct. 2755
 
 . Our nation's highest court previously had considered a case involving "vast claims for damages against the United States arising out of a disastrous explosion of ammonium nitrate fertilizer, which had been produced and distributed under the direction of the United States for export to devastated areas occupied by the Allied Armed Forces after World War II."
 

 Id.
 

 at 810
 
 ,
 
 104 S.Ct. 2755
 
 , 2765 (citing
 
 Dalehite v. United States
 
 ,
 
 346 U.S. 15
 
 ,
 
 73 S.Ct. 956
 
 ,
 
 97 L.Ed. 1427
 
 (1953) ). The plaintiffs charged the government with negligence on many levels: "the cabinet-level decision to institute the fertilizer export program, the failure to experiment with the fertilizer to determine the possibility of explosion, the drafting of the basic plan of manufacture, and the failure properly to police the storage and loading of the fertilizer."
 
 Varig Airlines
 
 ,
 
 467 U.S. at 811
 
 ,
 
 104 S.Ct. 2755
 
 .
 

 ¶ 49. The Court held that the government was protected under the discretionary function exception, which it described as " 'the discretion of the executive or the administrator to act according to one's judgment or best course' ":
 

 It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the "discretionary function or duty" that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.
 

 Varig Airlines
 
 ,
 
 467 U.S. at 811
 
 ,
 
 104 S.Ct. 2755
 
 (quoting
 
 Dalehite
 
 ,
 
 346 U.S. at 35-36
 
 ,
 
 73 S.Ct. 956
 
 ). The
 
 Varig
 
 Court continued that "the basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee-whatever his or her rank-are of the nature and quality that Congress intended to shield from tort
 liability."
 
 Varig Airlines
 
 ,
 
 467 U.S. at 813
 
 ,
 
 104 S.Ct. 2755
 
 .
 

 ¶ 50. This Court, in adopting the public policy function test, employed language from the United States Supreme Court that is in nowise binding upon this state supreme court: " '[T]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' "
 
 Jones v. Miss. Dep't of Transp.
 
 ,
 
 744 So.2d 256
 
 (Miss. 1999). Well before
 
 Jones
 
 and well before
 
 Varig
 
 and well before Section 11-46-9(1)(d), this Court had said that:
 

 Judicial review of basic policy-making decisions continues to be regarded by many as inappropriate because courts have no standards by which to judge such decisions. Judges and jurors are in no better position to evaluate the reasonableness of policy determinations than are those officials who are charged with making them. The reasonable man standard of tort law is not an appropriate measure for the political, social or economic desirability of government programs and the methods selected for pursuing them. State tort standards cannot adequately control those government decisions in which, to be effective, the decision maker must look to considerations of public policy and not merely to established professional standards or to standards of general reasonableness.
 

 Pruett v. City of Rosedale
 
 ,
 
 421 So.2d 1046
 
 , 1051-52 (Miss. 1982),
 
 superseded by statute as recognized by
 

 Jackson v. Daley
 
 ,
 
 739 So.2d 1031
 
 (Miss. 1999). Consistent with
 
 Varig Airlines
 
 ,
 
 Jones
 
 , and
 
 Pruett
 
 ,
 
 Brantley
 
 leaves to the legislative branch, at both the state and local levels, the public-policy-driven task of determining and controlling immunity.
 

 ¶ 51. Under the public policy function test, "the Court first determines 'whether the activity in question involved an element of choice or judgment[,]" and, if so, 'whether that choice or judgment involved social, economic, or political-policy considerations.' "
 
 Brantley
 
 ,
 
 152 So.3d at
 
 1112 (citing
 
 Montgomery
 
 ,
 
 80 So.3d at
 
 795 ) (citing
 
 Jones
 
 ,
 
 744 So.2d at
 
 260 ). The majority accuses this justice of having "no concern for
 
 stare decisis
 
 when the
 
 Brantley
 
 majority admittedly abandoned fifteen years of precedent." Maj. Op. ¶ 21 n.12. But the
 
 Brantley
 
 Court carefully explained the rationale for abandoning the public policy function test:
 

 This Court has examined the broad governmental function implicated by the suit to determine whether immunity applied, rather than the specific activity involved, in several prior cases. In the pre-
 
 Little
 
 [
 
 v. Miss. Dept. of Transp.
 
 ,
 
 129 So.3d 132
 
 (Miss.2013) ] case of
 
 Pratt
 
 [
 
 v. Gulfport-Biloxi Regional Airport Authority
 
 ,
 
 97 So.3d 68
 
 (Miss. 2012) ], a plurality of the Court determined that a municipality was entitled to discretionary-function immunity for a suit based upon the alleged improper placement of nonslip tape on temporary airstairs at a municipal airport.
 
 Pratt
 
 ,
 
 97 So.3d at 75-76
 
 (¶ 19). The plurality opined that the act of placing the tape on the stairs was performed in furtherance of the discretionary function of a municipality's operation of an airport.
 

 Id.
 

 at 72
 
 (¶ 10). The parties in that case had agreed that placing nonslip tape on airstairs "was not a ministerial function, as there [we]re no laws or regulations pertaining to th[at] activity."
 

 Id.
 

 The plurality concluded that, "barring a rule or regulation pertaining to a certain activity, decisions that are part of the airport's day-to-day operations are also discretionary."
 

 Id.
 

 Importantly, the plurality noted "that there are many laws, rules, and
 regulations pertaining to aviation and airports, so not every day-to-day decision or activity at an airport will be discretionary."
 

 Id.
 

 at 73
 
 (¶ 14).
 

 While it is true, as the dissent contends, that the plurality in
 
 Pratt
 
 applied the public-policy function test, it was clear that the overarching discretion involved with operating an airport was the dispositive factor in finding immunity. The plurality held that certain day-to-day decisions such as the placement of nonslip tape on airstairs fell "under the overall operation of the airport."
 

 Id.
 

 at 75
 
 (¶ 18). The regional airport authority's "operation of the airport involve[d] social and economic policy considerations, satisfying the second part of the public-policy function test."
 

 Id.
 

 (emphasis added). Any concept of the sort of policy decisions implicit in deciding how to place nonslip tape on airstairs was completely subsumed by the fact that the decision to operate an airport was discretionary and implicated economic policy considerations. Clearly, this Court looked at the broad governmental function of airport operation implicated by the suit when it determined that discretionary-function immunity applied, rather than analyzing the specific activity of placing nonslip tape on stairs.
 

 Further, in
 
 City of Jackson v. Doe ex rel. J.J.
 
 ,
 
 68 So.3d 1285
 
 , 1288 (¶ 12) (Miss. 2011), in which Chief Justice Waller joined the majority opinion, this Court held that a city was not liable for a dangerous condition in one of its parks because the "operation of a city park is a discretionary function of the city." In so holding, the Court did not examine the specific conduct which had led to the injuries involved, i.e., maintaining the park in a reasonably safe condition. Instead, the Court stated that the "creation and operation of a city park is within the discretion of the municipality[,]" and thus immunity applied.
 

 Id.
 

 Again, the Court did not focus on the specific activity in question, but rather on the overarching function of the operation of a public park. So, while the dissent in the present case may argue that this approach arises from some novel understanding of the law, in actuality, this Court has been focusing on the function, rather than on the act, for some time now.
 

 In
 
 Pratt
 
 ,
 
 Montgomery
 
 , and
 
 Little
 
 , this Court recognized that, although a broad function, such as the operation of an airport, may be discretionary, or that road maintenance may be ministerial, within those functions may lie more narrowly defined duties which may be rendered ministerial or discretionary through other legislative enactments or through regulations. Accordingly, the language in
 
 Little
 
 which provides that the Court must look only at the function can be misunderstood. The Court first must consider the broadest function involved in order to make a baseline determination of whether the overarching function is discretionary or ministerial. The Court then must examine any narrower duty associated with the activity at issue to determine whether a statute, regulation, or other binding directive renders that particular duty a ministerial one, notwithstanding that it may have been performed within the scope of a broader discretionary function.
 

 For example, in the context of
 
 Pratt
 
 , operators of an airport are, of course, required to conduct security screenings of passengers who are attempting to board airplanes. A municipality's decision to operate an airport may be discretionary; but once that discretion has been exercised to operate the airport, the municipality must comply with security regulations promulgated by the
 Transportation Security Administration. In this way, it is useful to think of the operation of an airport as an overarching discretionary function that shelters several narrower functions or duties, many of which, such as the provision of security and compliance with federal security regulations, are ministerial.
 

 Brantley
 
 ,
 
 152 So.3d at 1113-1115
 
 .
 

 ¶ 52. The public policy function test provides no guidance with regard to whether the overarching function, discussed in the cases mentioned by
 
 Brantley
 
 , or the narrower duties associated with the overarching function involved an element of choice or judgment, and, if so, also involved social, economic, or political-policy considerations. Under the public policy function test, this Court first had to consider whether to look to the overarching function or the narrower duties associated with that function. So the public policy function test involved the same sort of "tedious and scattered quest" the majority accuses
 
 Brantley
 
 of having created and it certainly "made it little more than a gamble when lawyers advise[d] clients whether they [had] valid tort claims or defenses in MTCA cases" causing attorneys and litigants to have to "wait until their case shakes out in the appellate courts to know what the law is." Maj. Op. ¶¶ 15, 20, 21.
 
 Brantley
 
 provided certainty: "this Court must look closely at any of the narrower functions or duties underlying the claim at issue and determine whether a statute or other regulation removes it from the umbrella of discretionary function immunity."
 
 Brantley
 
 ,
 
 152 So.3d at 1117
 
 .
 

 ¶ 53. I turn to the case currently before the Court. Section 63-3-305 requires that:
 

 Local authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this chapter or provisions of local traffic ordinances or to regulate, warn, or guide traffic. All such traffic-control devices hereafter erected shall conform to the state manual and specifications.
 

 Local authorities in exercising those functions referred to in the preceding paragraph shall be subject to the direction and control of the state highway commission.
 

 Miss. Code Ann. § 63-3-305
 
 (Rev. 2013).
 

 ¶ 54. In Section 63-3-305, the legislature mandates that local authorities place and maintain traffic control devices "upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this chapter or provisions of local traffic ordinances or to regulate, warn, or guide traffic." Section 63-3-305 continues: "All such traffic-control devices hereafter erected shall conform to the state manual and specifications." The legislature incorporated by reference local traffic ordinances and the State manual and specifications and made those regulations mandatory once the local authority deemed it necessary to place and maintain traffic control devices. Lincoln County, in its motion to dismiss, stated that the company it had hired to remove the bridge and replace it with a culvert pipe "had removed the old bridge, inserted the culvert pipes, and was in the process of covering the culvert pipes at the end of the day," but that "[t]here was a drop off left," so the company "placed a homemade barricade across the south end of the road warning the public that the bridge construction was not completed."
 

 ¶ 55. In
 
 Brantley
 
 , this Court explained that:
 

 Our holding in
 
 Little
 
 stands for the principle that all acts in furtherance of a ministerial function lack immunity notwithstanding that the act itself may involve
 an element of discretion. That said, while one statute may render a broad function ministerial, another statute or regulation may render a duty involved with that function discretionary, thus allowing the performance of such a duty to enjoy immunity.
 
 [22]
 
 And clearly, the converse must be true, such that narrower duties encompassed in a broad discretionary function may be rendered ministerial through statute or regulation.
 

 Brantley
 
 ,
 
 152 So.3d at 1113
 
 . This Court held that "a plaintiff may defeat sovereign immunity, even when a governmental entity's act furthered a discretionary function or duty, when the plaintiff proves that the act also furthered a more narrow function or duty which is made ministerial by another specific statute, ordinance, or regulation promulgated pursuant to lawful authority."
 

 Id.
 

 at 1115
 
 .
 

 ¶ 56. In
 
 Boroujerdi v. City of Starkville
 
 , this Court observed that:
 

 The duty to maintain a sewage system is not imposed by law upon municipalities. The language of [Mississippi Code] Section 21-27-189 [ (Rev. 2007) ] explicitly leaves it to the discretion of municipalities whether and how to maintain their sewage systems, if any. Accordingly, sewage maintenance, as a general function, is discretionary. This, in fact, is similar in principle to the statute [ (
 
 Miss. Code Ann. § 41-55-1
 
 (Rev. 2013) ) ] rendering a city ambulance service a discretionary function in
 
 Brantley
 
 . Our task now, pursuant to our holding in
 
 Brantley
 
 , is to consider whether there are narrower functions or duties concomitant to the general discretionary function of sewage maintenance that have been rendered ministerial through statute, ordinance, or regulation.
 

 Boroujerdi v. City of Starkville
 
 ,
 
 158 So.3d 1106
 
 , 1112 (Miss. 2015). This Court referenced the Federal Water Pollution Control Act and regulations from the Mississippi Department of Environmental Quality to find that, "[c]learly, although the legislature granted to municipalities the discretion to maintain their sewage systems initially, there remain many statutes and regulations which render ministerial certain more narrow functions of sewage-system maintenance."
 

 Id.
 

 at 1113
 
 . "[I]f Boroujerdi can prove that the City's alleged inaction in repairing the sewage system was related to a more narrow function made ministerial by statute, ordinance, regulation, or other binding directive, then he may proceed with his claim."
 

 Id.
 

 at 1114
 
 .
 

 ¶ 57. In
 
 Mississippi Transportation Commission v. Adams
 
 , this Court held that, while Mississippi Code Section 63-3-303 is discretionary, the Mississippi Transportation Commission's adoption of the
 
 Mississippi Standard Specifications for Road and Bridge Construction
 
 (the "Red Book") imposed narrower ministerial duties on the Mississippi Transportation Commission entitling the plaintiff to proceed with her claims.
 
 Miss. Transp. Comm'n v. Adams
 
 ,
 
 197 So.3d 406
 
 , 413 (Miss. 2016). Citing
 
 Brantley
 
 , the
 
 Adams
 
 Court observed that "the function here presents 'the converse' principle that
 
 Brantley
 
 discussed: placement and maintenance
 of traffic-control devices is discretionary, unless narrower duties encompassed in that function-such as placing and maintaining edge lines-have been 'rendered ... ministerial through statute or regulation.' "
 

 Id.
 

 (quoting
 
 Brantley
 
 ,
 
 152 So.3d at
 
 1113 ).
 

 ¶ 58. Here, Section 42-85 of Brookhaven's Code of Ordinances states that:
 

 The permittee shall ... ensure that any work ... which is left overnight or in an unfinished condition at any time when construction is not actually occurring or during actual construction is made safe, which shall minimally include the placement of danger or warning lights and barricades as required by any applicable or governing safety or traffic codes, regulations, and laws and in accordance with the Manual on Uniform Traffic Control Devices.
 
 [23]
 

 Brookhaven, Miss., Code § 42-85 (2017). Section 42-87 provides:
 

 At all times, including the non-work and overnight hours, the permittee shall be responsible for the safety of the area where any excavation, unfinished fill or any obstruction of any kind whatever is placed in any street, alley, sidewalk, or right-of-way and permitted to remain or exist. Such area shall minimally be marked with good and sufficient danger or warning lights, with barricades, and in such a manner as to plainly show or reveal the place and extent of such excavation, unfinished fill or obstruction. Danger or warning lights shall be erected and illuminated not later than sunset of each evening and kept burning continuously until sunrise the next morning. The placement, type, and form of danger or warning lights and barricades and ensuring the safety of these areas shall be in accordance with any and all applicable or governing safety or traffic codes, regulations, and laws and with the Manual on Uniform Traffic Control Devices.
 

 Brookhaven, Miss., Code § 42-87 (2017). The
 
 Mississippi Standard Specifications for Road and Bridge Construction
 
 (the "Red Book") requires:
 

 [W]arning signs in advance of all places on the project where operations may interfere with traffic and all intermediate points where the work crosses or coincides with the existing roadway .... All barricades, warning signs, lights, temporary signals, other protective devices, flaggers, and signaling devices shall meet or exceed the minimum requirements contained in the [Manual on Uniform Traffic Control Devices].
 

 Red Book § 107.10 (2017).
 
 [24]
 
 Mississippi Administrative Code Section 37-1-26:00100-102 (2017) provides that "[s]igns and signals will be warranted, erected, and maintained in accordance with the guidelines of the Manual on Uniform Traffic Control Devices adopted by the Transportation Commission, as per Mississippi Code ... 63-3-303...."
 

 ¶ 59. As in
 
 Adams
 
 , "the function here presents 'the converse' principle that
 
 Brantley
 
 discussed: placement and maintenance of traffic-control devices is discretionary, unless narrower duties encompassed in that function-such as placing and maintaining edge lines-have been
 'rendered ... ministerial through statute or regulation.' "
 
 Adams
 
 ,
 
 197 So.3d at 413
 
 (quoting
 
 Brantley
 
 ,
 
 152 So.3d at
 
 1113 ). The local ordinances and State regulations referenced above impose ministerial (mandatory) duties upon the City of Brookhaven and on Lincoln County to erect warning barricades and lights and to place signs where construction affects an existing roadway.
 

 ¶ 60. The majority pontificates that, "[a]s a result of
 
 Brantley
 
 , what the Legislature intended as a shield-discretionary-function immunity under Section 11-46-9(1)(d) -is flipped on its head and is being used as a sword." Maj. Op. ¶ 17. But surely, in a context such as this, if what Wilcher has alleged is true (and we must consider it as such at the Mississippi Rule of Civil Procedure 12(b)(6) stage), the failure of the city and county to abide not only by the regulations mandated under State law but also by the ordinances which they themselves adopted, does not permit the application of discretionary-function immunity. If what Wilcher alleges is more likely true than not, the city's and county's nonfeasance removes the blanket of immunity. Conversely, local and State authorities may decide-even if a broad statute creates a mandatory duty and to the extent the legislature declines to impose narrower ministerial duties-to render discretionary whichever narrower functions or duties those authorities deems appropriate. The
 
 Brantley
 
 formula, in effect, makes it possible for the legislature and State and local authorities to control immunity, or the lack thereof, by making discretionary any narrower functions or duties which otherwise would have rendered them ministerial.
 

 ¶ 61. Because
 
 Brantley v. City of Horn Lake
 
 ,
 
 152 So.3d 1106
 
 (Miss. 2014), provides the most sensible and pragmatic approach to applying discretionary function immunity under Mississippi Code Section 11-46-9(1)(d) (Rev. 2012), I would hold fast to its dictates and, accordingly, respectfully concur with the majority in result only.
 

 ¶ 62. The majority decries
 
 Brantley
 
 's forcing "parties and judges to wade through an ever-deepening quagmire of regulations and ordinances to locate 'ministerial' or 'discretionary' duties, overcomplicating the process ...." Maj. Op. ¶ 2. Its predominant complaint about
 
 Brantley
 
 is that it "overcomplicates the process of litigating a claim and places the success of a claim on the ability of the injured party's attorney to sift through myriad and sometimes arcane regulations-creating extra layers of proof, which may have little or no practical effect on the actual negligent act." Maj. Op. ¶ 15 (quoting
 
 Crum v. City of Corinth
 
 ,
 
 183 So.3d 847
 
 , 854 (Miss. 2016) (Randolph, P.J., concurring in result only) ). But, upon this Court's return to the public policy function test, litigants and courts will continue to be required to "scour the state manual" and "hunt for other regulations and ordinances" in order to make arguments about whether the activity in question involved any policy considerations. Maj. Op. ¶ 15. Yet courts and litigants will enjoy no longer the certainty of knowing that if the most narrow duty associated with an overarching function is discretionary, the government has immunity; and if the most narrow duty associated with an overarching function is ministerial, the government does not retain its immunity and the case can proceed. Moreover, seasoned practitioners and jurists understand and accept that this is what the lawyers who represent parties and the judges who sort through and decide complex legal issues, often involving myriad statutes, ordinances, and regulations, have done from time immemorial; we "scour" through an ever-deepening morass of material, solving people's problems and searching for answers, undaunted by the
 volume or complexity of the issues. This is what we do.
 

 ¶ 63. The Mississippi Tort Claims Act itself can be a perplexing thing to understand, and has, since its inception, been so recognized by Bench and Bar. Particularly confusing, as demonstrated by legion pre-
 
 Brantley
 
 pronouncements by this Court, have been the exceptions to outright governmental tort immunity found in cases in which negligence is alleged concerning the performance or lack of performance of ministerial, or mandatory, governmental duties. What
 
 Brantley
 
 did, in full accord with the Mississippi statute, was to clarify and make that process relatively simple and easy. In some cases, the
 
 Brantley
 
 analysis has upheld governmental immunity. In others, immunity has been found inapplicable.
 

 ¶ 64. And that process is not exactly a "recently created test," as the majority characterizes it. Maj. Op. ¶ 1. It has been in use since 2014. Today, a majority of the Court chooses to abolish it, primarily because, notwithstanding its simplicity, it is accused falsely of being too complicated. So much for
 
 stare decisis.
 

 [25]
 

 KING, J., JOINS THIS OPINION.
 

 In neither
 
 Sheridan
 
 nor
 
 Panella
 
 did the United States Supreme Court apply the public policy function test.
 

 The Court here incorporated the following footnote in
 
 Brantley
 
 :
 

 Such was recognized by this Court in
 
 Montgomery
 
 . "Occasionally ... the Legislature will mandate that a political subdivision fulfill some particular function, but then specifically set forth that some portion or aspect of that function is discretionary. When that happens, acts fulfilling the discretionary portion of the governmental function enjoy immunity."
 
 Miss. Transp. Comm'n v. Montgomery
 
 ,
 
 80 So.3d 789
 
 , 798 (¶ 31) (Miss. 2012).
 

 Brantley
 
 ,
 
 152 So.3d 1106
 
 , 1113 n.3.
 

 Section 2B.58 of the Manual on Uniform Traffic Control Devices (2009) provides images of signs required to be displayed in order to indicate a road closure: "The ROAD CLOSED ... sign should be installed where roads have been closed to all traffic .... The word message BRIDGE OUT may be substituted for ROAD CLOSED legend where applicable."
 

 http://sp.mdot.ms.gov/Construction/Standard%20Specifications/2017%20Standard%20 Specifications.pdf (last visited May 23, 2018).
 

 As discussed above, this Court clearly found the application of the public policy function test to have been "pernicious" in
 
 Brantley
 
 . This Court "has declined to continue applying an incorrect interpretation when we find that it is 'pernicious,' 'impractical,' or 'mischievous in ... effect, and resulting in detriment to the public.' "
 
 Bester v. State
 
 ,
 
 188 So.3d 526
 
 , 529 (Miss. 2016) (quoting
 
 Payne v. Tennessee
 
 ,
 
 501 U.S. 808
 
 , 828,
 
 111 S.Ct. 2597
 
 ,
 
 115 L.Ed.2d 720
 
 (1991) (internal quotations omitted) ).